1                    IN THE UNITED STATES DISTRICT COURT
                        FOR THE DISTRICT OF COLUMBIA
2

3    UNITED STATES OF AMERICA,       ) CRIMINAL ACTION NO.:
                                     ) 22-0317-TSC
4              Plaintiff,            )
          vs.                        )
5                                    )
     KASEY HOPKINS,                   ) Washington, D.C.
6                                    ) April 10th, 2023
               Defendant.            ) 11:08 a.m.
7    _____) Via:  Zoom

8

9                      TRANSCRIPT OF SENTENCING
            BEFORE THE HONORABLE TANYA S. CHUTKAN
10                 UNITED STATES DISTRICT JUDGE

11

12   APPEARANCES:

13   For the Government:         Jeffrey A. Kiok, Esquire
                                 Department of Justice
14                               National Security Division
                                 950 Pennsylvania Avenue NW
15                               Suite 6700
                                 Washington, DC 20530
16

17   For the Defendant:         John R. Osgood, Esquire
                                 Attorney at Law
18                               112 SW 3rd Street, Suite I
                                 Lee's Summit, MO 64063
19

20

21

22   Reported by:              Christine T. Asif, RPR, FCRR
                                 Official Court Reporter
23                               United States District Court
                                 for the District of Columbia
24                               333 Contitution Avenue, NW
                                 Room 6507
25                               Washington, D.C., 20001
                                 (202) 354-3247

```
1                    P R O C E E D I N G S
2              THE COURT:  Good morning.
3              THE CLERK:  Good morning.
4              All right, Counsel, this Honorable Court is now in
5     session.  The Honorable Judge Tanya S. Chutkan presiding.
6              Your Honor, we have criminal action 22-317, United
7     States of America versus Kasey Hopkins.  We have Mr. Jeffrey
8     Kiok representing the government.  Mr. John Osgood
9     representing Mr. Hopkins.  And we also have Ms. Jessica
10    Reichler representing probation.  And all parties are
11    appearing by video.
12             THE COURT:  All right.  Good morning, everyone.
13    Thank you for accommodating me this morning.  I just needed
14    some extra time.
15             Mr. Hopkins, can you hear me?
16             THE DEFENDANT:  Yes, Your Honor.
17             THE COURT:  All right.
18             And Mr. Kiok -- is that how I pronounce your name,
19    Kiok?
20             MR. KIOK:  Kiok, yes, Your Honor.
21             THE COURT:  Thank you.  All right.
22             Okay.  We're here for the sentencing of the
23    defendant, Kasey Hopkins, who has pleaded guilty to parading,
24    demonstrating, or picketing in a Capitol building in violation
25    of Title 40 United States Code Section 5104(e)(2)(G).  The
```

1    parties have agreed to proceed via video conference.

2              Are we on the open -- to anyone who may be watching

3    or taking part in this proceeding, I'll just remind everyone

4    that it's strictly prohibited by federal or local court rules

5    to take screenshots, record, or otherwise broadcast or publish

6    any portion of this proceeding other than by ordering a

7    transcript.

8              So in preparation for this hearing, I've received

9    and reviewed the presentence report and sentencing

10   recommendation from the probation department.  And I also

11   reviewed the plea agreement and statement of offense signed by

12   Mr. Hopkins, the sentencing memorandum from the government and

13   from Mr. Hopkins, and letters in support of Mr. Hopkins from

14   Mr. Hopkins, on his own behalf, and from four other

15   individuals, Joseph Torchia, T-o-r-c-h-i-a, Laurel Walden,

16   Makayla John, that's M-a-k-a-y-l-a, John, and Angie Byram,

17   B-y-r-a-m.  That's what I've received, just so I'm not -- if

18   there's anything else I've not included that was sent to me,

19   you should say so.

20        With regard to the presentence report, the final

21   presentence report and sentencing recommendation were filed on

22   March 28th, 2023, and indicate that the parties did not have

23   any objections to any of the findings in the presentence

24   report.

25              Mr. Kiok, any objection to any of the factual

1    recitations set forth in the report?

2            MR. KIOK:  No, Your Honor.

3            THE COURT:  Are you expecting any witnesses or an

4    evidentiary hearing?

5            MR. KIOK:  No, Your Honor.  However, I have three

6    exhibits that I would like -- that I'm prepared to play

7    virtually.

8            THE COURT:  That's fine.

9            MR. KIOK:  If that's fine.

10           THE COURT:  Do you have any objection, Mr. Osgood?

11           MR. OSGOOD:  No, Your Honor.

12           THE COURT:  Okay.  Mr. Hopkins, are you fully

13   satisfied with the services of your attorney, Mr. Osgood, in

14   this case?

15           THE DEFENDANT:  Yes, Your Honor, I am.

16           THE COURT:  Do you feel that you've had enough time

17   to talk with him about the probation department's presentence

18   report and the papers that the government filed in connection

19   with the sentencing?

20           THE DEFENDANT:  Yes, Your Honor.

21           THE COURT:  Okay.  Mr. Osgood, have you and

22   Mr. Hopkins read and discussed the presentence report?

23           MR. OSGOOD:  We have, Your Honor.

24           THE COURT:  Are there any disputed issues of fact;

25   that is, does Mr. Hopkins have any objections to any of the

1    factual statements set forth in the presentence report?

2                MR. OSGOOD:  No, Your Honor, it's quite

3    straightforward.

4                THE COURT:  All right.  Hearing no objection from

5    either side, I will accept the factual recitation in the

6    presentence report regarding the circumstances of this

7    offense.  And therefore, the facts as stated in the report

8    will be my findings of fact for the purpose of this

9    sentencing.

10               Now, because Mr. Hopkins pleaded guilty to a class B

11   misdemeanor offense, the U.S. Sentencing Guidelines do not

12   apply in this case.  But I still have to, as I must in every

13   case, consider a variety of factors under Section 3553(a),

14   including the applicable penal statute.  So I'll start with

15   that.

16               The charge of parading, demonstrating, or picketing

17   in a Capitol, in violation of 40 U.S.C 5104(e)(2)(G), carries

18   a statutory maximum penalty of six months of imprisonment.  No

19   mandatory minimum is applicable.  Mr. Hopkins is eligible for

20   up to five years of probation because the offense is a

21   misdemeanor.

22               Because Mr. Hopkins has pleaded guilty to a petty

23   offense, the statutes do not authorize a term of supervised

24   release.  The statute of conviction sets a maximum fine of up

25   to $5,000, and there is a special assessment of $10 that is

1    mandatory.

2           Mr. Hopkins has agreed to pay $500 in restitution to

3    the Clerk of the Court for disbursement to the Architect of

4    the Capitol to go towards payment for the damages sustained to

5    the Capitol as a result of the riots on January 6.  And that

6    is pursuant -- and he made that agreement pursuant to

7    18 U.S.C. Section 3663(a)(3) and the plea agreement.

8           Counsel, have I stated accurately the statutory

9    framework under which we're operating?

10           Mr. Osgood?

11           MR. OSGOOD:  Yes, ma'am.

12           THE COURT:  Mr. Kiok?

13           MR. KIOK:  Yes, Your Honor.

14           THE COURT:  Okay.  Before I discuss the other

15    sentencing factors that will bear on my final decision, I will

16    at this point notify the parties, which you probably already

17    know this, that probation office has recommended 36 months of

18    probation, a thousand dollar fine, $500 in restitution, and a

19    $10 special assessment.  The recommendation of the probation

20    office is not based on any facts or circumstances that have

21    not already been revealed to the parties in the presentence

22    report.

23           Before I go any further, I'll just note that the

24    government is asking for a sentence of both incarceration

25    followed by a period of probation.

1        Mr. Kiok, I believe -- based on other hearings

2   involved with your office, I believe that you believe that

3   this is a legal -- this is legal?

4        MR. KIOK:  Yes, Your Honor, we do.

5        THE COURT:  Okay.  Mr. Osgood, what's your position?

6   I've read your one-page sentencing memorandum asking for a

7   day -- let me just finish, asking for a day of incarceration

8   and no -- nothing regarding a further period of probation.  Do

9   you agree that this Court may -- understanding you're not

10  asking for it, but may impose a period of incarceration

11  followed by probation, or do you disagree and argue that it is

12  one or the other?

13       MR. OSGOOD:  I already talked to the prosecutor

14  about this, Your Honor.  In our district, we cannot combine,

15  and we consider that to be an illegal sentence, both a period

16  of incarceration and probation.  That, historically -- I was a

17  federal prosecutor for 35 years, and we never did that before.

18  That's the old split sentence criteria under the sentencing

19  structure before the Federal Sentencing Guidelines came into

20  effect in 1986.  I know he cited some authority, but he's also

21  cited some contra authority that says that it would constitute

22  an illegal sentence.  And in that regard, and I don't know

23  whether it's my turn to address sentencing or not --

24       THE COURT:  It's going to be shortly.  But I'm

25  actually just asking you, before I -- don't consider this your

1    allocution.  I'm just asking if you object.  I realize that

2    there is some controversy with regard to that, even in this

3    district.  I have in the past given such sentences.  I have in

4    the past not given such sentences.  I haven't made a finding

5    as to -- because usually I consider the parties' position.

6    It's unusual.  We don't usually get misdemeanors in this

7    district.  So it hasn't been something that we've had to

8    consider in the past.  So I'm just asking for your position on

9    it.

10          MR. OSGOOD:  And we don't get a lot here.  And I --

11   I do -- obviously we've waived appeal, and we're not going to

12   take this up on appeal if you give him a split sentence.  In

13   my allocution, I'm just going to make some points as to why I

14   think that's probably unnecessary in this case.

15          THE COURT:  All right.  I appreciate that position.

16   Okay.  Thank you.

17          So I'm going to -- again, because the Sentencing

18   Guidelines don't apply here, I'm going to ask the parties or

19   give the parties an opportunity to address the Court as to

20   what an appropriate sentence should be.

21          Mr. Kiok.

22          MR. KIOK:  Yes, Your Honor, thank you.  The

23   government's recommendation is four months of incarceration

24   with a period of 36 months probation, 60 hours of community

25   service, and $500 in restitution.  There is mainly two sort of

1   areas of argument that are around this.  The first is the

2   defendant's own conduct, including his pre-January 6

3   statements, the fact that he entered the Capitol twice, and

4   that he entered into a sensitive space, specifically the

5   office of U.S. Senator Jeffrey Merkley.

6          The secondary argument is regarding the defendant's

7   criminal history, including his serious criminal convictions

8   that have had significant periods of incarceration, as well as

9   his convictions while he's been on probation.

10         So I'm now going to go into the period of conduct.

11  And I guess I'm just going to -- before I begin, I'm going to

12  reserve argument, unless Your Honor wants me to address it

13  now, about probation's recommendation to transfer

14  jurisdiction.

15         THE COURT:  Sure.  Yeah, I -- well, no, we'll

16  address it after sentencing.

17         MR. KIOK:  All right.  And as long as -- if the

18  Court's considering that, I'd just like to have an opportunity

19  to --

20         THE COURT:  I guess, you know, Mr. Osgood, are you

21  going to take a position on whether jurisdiction should be

22  transferred to the district in Missouri?

23         MR. OSGOOD:  A lot of that depends on the sentence,

24  Your Honor.

25         THE COURT:  Okay.  I'll hear it after sentencing.

1      That makes sense.

2                  MR. OSGOOD:  I think that's better, yes.

3                  THE COURT:  Okay.

4                  MR. KIOK:  So moving to the defendant's conduct,

5      Your Honor, as it's recited on pages 2 to 3 of the memo, the

6      defendant had a Facebook conversation with another individual

7      where he was soliciting for that individual to come to

8      Washington, D.C. from Kansas City with him.  The other

9      individual said, "I'm jealous.  I want to punch ANTIFA."

10                 And Mr. Hopkins said, "Let's roll.  Pack a bag,

11     man," you know, not expressing shock or anything like that at

12     this, you know, expression of violence.

13                 Mr. Hopkins also says, in that conversation where

14     they're talking about the possibility of civil war, he says,

15     "Civil war would suck.  However, if shit gets out of hand,

16     we've got a plan.  Hope you do too."

17                 Moving on to the period of January 6th, I'm not

18     going to recite the general events of the January 6 attack on

19     the Capitol.  We recite them briefly in our memo, and I know

20     the Court is very familiar with them.  I'm moving specifically

21     to the defendant's conduct.  The defendant entered the Capitol

22     twice.  The first time he entered -- I'm now going to share my

23     screens.  The first time -- if everyone can see that?

24                 Is Your Honor able to see the video?

25                 THE COURT:  I -- well, I -- it's still right now,

1    but I -- yes, it's up on my -- it's up on my monitor, and I

2    can see it in front of me as well.

3            MR. KIOK:  Thank you, Your Honor.

4            So I'm going to be playing.  There's no sound on the

5    closed captioning video.  But at approximately seven seconds,

6    you can see the defendant enter, wearing a gray hoodie.

7            (Video played.)

8            MR. KIOK:  I'm pausing the video at seven seconds

9    now.  You can see him in the lower right.  He's wearing a gray

10   hoodie, a red hat, and a black vest.  You can see that it

11   appears that he's perhaps recording on his phone.

12           THE COURT:  Okay.

13           MR. KIOK:  I'm resuming the video.

14           (Video played.)

15           MR. KIOK:  You can see that he's walking towards the

16   entrance to the Senate Parliamentarian's Office where he's

17   going in, looking, and then he's, you know, continuing to

18   film, putting on a blue neck gator, and then he's walking

19   around.  And you can see here he's sort of hitting some

20   debris, and then he's walking off screen.

21           I'm going to fast -- I'm going to advance this clip,

22   Exhibit 1.

23           I should say, Your Honor, I ask that this exhibit be

24   marked as Exhibit 1, and I would ask that it be moved into

25   evidence.  I apologize for not doing so earlier.

1           THE COURT:  Any objection, Mr. Osgood?

2           MR. OSGOOD:  No, Your Honor.

3           THE COURT:  It will be admitted.

4           MR. KIOK:  So advancing now -- thank you, Your

5    Honor.  Advancing now to two minutes and eight seconds.

6           (Video played.)

7           MR. KIOK:  You can see the defendant had been --

8    he's coming back from the top of the screen.  He's wearing

9    black sunglasses and he's quickly moving out.  So he's only in

10   the building at this point for about two minutes before he

11   leaves.  But I think it's significant in that he enters, he

12   looks into a sensitive space, he's recording and then he

13   leaves the -- and then he leaves the building.  And just a few

14   minutes later, he reenters.

15          So I'm now asking to mark the exhibit I'm about to

16   share as Exhibit No. 2.  I ask that it be admitted into

17   evidence.

18          THE COURT:  It will be admitted.

19          MR. KIOK:  So this is now a camera outside the

20   Senate wing door.  And I'm advancing to approximately one

21   minute in the clip.  You can see there's a door and then

22   there's a window on the right.  You can see the defendant

23   walking by the window and then he is walking into the Senate

24   wing door.  Now, again, there's no sound in this clip, but

25   we're going to see a third clip.

1          (Video played.)

2          MR. KIOK:  And you'll see the defendant has now come

3    in, he's walking, and he's walking down a hallway to the upper

4    left.  You can see he's walking with another individual.

5    They're looking at a room, and they're going into a room.

6          Now, I think it's significant at this point -- I'm

7    going to pause this exhibit now.  And I'm sharing -- you know,

8    the Court obviously isn't able to hear a sound at this point.

9    But we're going to go into Exhibit 3, which does have sound,

10   and this is a video from another rioter.  And I'm going to be

11   playing the sound, so I just want to alert the Court, the

12   Court is going to hear a loud, high-pitched noise, audible,

13   that was -- that all the rioters could hear as they were

14   entering.

15         THE COURT:  I've heard it before, so I'm prepared.

16         MR. KIOK:  Sorry, just --

17         THE COURT:  It's all right.

18         MR. KIOK:  So I'm now asking to be marked as

19   Exhibit 3, and I'd ask that it be moved into evidence.

20         THE COURT:  It will be admitted.

21         MR. KIOK:  So in addition to showing this -- and I'm

22   going to warn the Court, there is some expletives in this

23   video.  I'm going to begin at zero seconds.

24         (Video played.)

25         MR. KIOK:  I'm now pausing the video at ten seconds.

1    The defendant is in the -- excuse me, this rioter is in this

2    area of the Senate wing lobby where we just saw Mr. Hopkins

3    enter.  And there's a loud, high-pitched sound playing.

4           I'm now going to advance this video to approximately

5    three minutes and 20 seconds.  And I'm going to play the

6    video.

7           (Video played.)

8           MR. KIOK:  I'm going to pause the video here.

9           Some things I'd like to point out to the Court is

10   that this rioter, who's the one who is taking the video, it's

11   immediately apparent to him that this is someone's office.

12   And I think that's significant.  It's obviously apparent to

13   this rioter that it's a -- you know, this is the private

14   office of someone and not normally a public space.

15          Also as you can see towards the center right, you

16   can see the defendant taking a picture of someone who is

17   seated at the table, a conference table right there.

18          I'm going to resume the video.

19          (Video played.)

20          MR. KIOK:  So, Your Honor, I think you can see in

21   Exhibit 3, you know, this office is being, for lack of a

22   better word, ransacked.  There's an overturned lamp.

23   There's -- one of the rioters is mentioning that it smells

24   like tear gas in there.  And the defendant is in there just

25   gamely taking pictures and walking around, invading this

1    private, sensitive space.

2            THE COURT:  This is a second -- this is on his

3    second visit -- entry in the building?

4            MR. KIOK:  Yes, Your Honor.

5            So this is -- so in Exhibit 2, when we saw the

6    defendant enter through the Senate wing doors and then walk

7    into a room off of the hallway, this is that room that we see

8    in Exhibit 3.

9            THE COURT:  Okay.

10           MR. KIOK:  So the first place he goes to is into

11   this sensitive space.

12           Now, the defendant -- you know, as the Court can see

13   in the statement of facts and what's repeated in the statement

14   of offense, the defendant, you know, continues to go around

15   the Capitol for about another ten minutes and then leaves

16   through the same door.

17           So moving on from the 6th and the defendant's

18   conduct, I'd also like to bring up to the Court the

19   defendant's interview with the FBI, which was before he was

20   arrested.  And the defendant, you know, acknowledged being at

21   the Capitol on January 6th.  And when the FBI Task Force

22   Officer specifically asked him were you inside the Capitol,

23   the defendant didn't respond either way.  He said, you know,

24   if you find video of me there, I would be shocked.  And I

25   don't think that's what bears out in the video, but

1    importantly, it's a nonanswer.  It's a way of -- you know,

2    it's not a --

3          MR. OSGOOD:  Your Honor, I'm going to object to this

4    line of argument unless he produces the document, marks it,

5    and puts it into evidence.

6          THE COURT:  Well, for one thing, it's the same

7    argument he made in his sentencing memorandum.  You didn't

8    object to it in your sentencing memorandum, Mr. Osgood.  And

9    why is it -- why does he -- why is he required to put any

10   video in?  He's -- this is allocution.  He's quoting from your

11   client who told the FBI, if there was video of me inside,

12   you'd see me looking shocked.  And all Mr. Kiok is saying is

13   that so far, they've recovered no video of your client looking

14   shocked.  Why is he required to put in a video that's not

15   there?

16         MR. OSGOOD:  I didn't suggest he was putting in a

17   video, Your Honor.  My position is the best evidence of what

18   he said would be the FD 302.  If he wants to mark that and put

19   it in for the Court to consider, I have no problem with that.

20   I'm arguing that his --

21         THE COURT:  Ah.

22         MR. OSGOOD:  -- is a problem with me.

23         THE COURT:  Did you receive a copy of that

24   interview, those interview notes?

25         MR. OSGOOD:  I -- I do have a copy of the first FBI

1    interview.  We did a post-conviction interview with the FBI.

2    I don't have a copy of that 302.

3              THE COURT:  I think Mr. Kiok is referring to his

4    pre-arrest interview with the FBI.  Have you received the

5    FD 302 for that?

6              MR. OSGOOD:  I do have that.

7              THE COURT:  All right.  Do you have any --

8              MR. OSGOOD:  And that was -- again, he did not

9    invoke his right, but I'm -- well --

10             THE COURT:  Do you believe, Mr. Kiok -- do you

11   believe that Mr. Kiok's description of your client's

12   statements to the FBI during that pre-FBI interview were -- is

13   incorrect or somehow inaccurate?

14             MR. OSGOOD:  They are close, but he is obviously

15   giving them the spin the government wants them to have, is my

16   position.

17             THE COURT:  Go ahead, Mr. Kiok.

18             I hear your objection.  It's overruled.

19             MR. OSGOOD:  Thank you.

20             MR. KIOK:  Your Honor, and so my point is, is I

21   don't believe the defendant made a -- was, you know, fully

22   truthful with the FBI about his role then.  And I will

23   acknowledge that the defendant took -- had a post-plea debrief

24   with the FBI, as I noted in my sentencing memo, and that he

25   acknowledged his presence in the Capitol.  But so that's sort

1    of the -- those are the arguments about the defendant's

2    conduct.  And again, I'd emphasize he entered twice, and he

3    entered into a sensitive space.

4            And then moving on to the defendant's criminal

5    convictions and the criminal history which was outlined in the

6    presentence report.  As the Court can see, the defendant has

7    an extensive criminal history.  The defendant was incarcerated

8    for a seven-year period on one of his convictions.  And the

9    defendant has multiple criminal convictions beginning in the

10   mid '90s and continuing to the early 2000s, including

11   convictions where he was sentenced to a state term of

12   probation and then subsequently committed additional crimes

13   and had his probation revoked.

14           I bring this up because the argument is really

15   toward specific and general deterrence.  You know, an

16   additional period of supervision is not appropriate for a

17   defendant like this, who has this combination of criminal

18   history and this combination of conduct.  I don't think, as I

19   said in my -- in the memoranda, I don't think there's been

20   a -- I haven't seen another defendant on misdemeanor charges

21   who has this combination of entering twice and entering into a

22   sensitive space, and criminal history that is this serious.

23   Which is why the government is making the argument it is for

24   the four months of incarceration split with the 36 months of

25   probation.

1    I'm not going to recite all of the criminal history,

2  but I'm going to note, again, multiple times the defendant was

3  sentenced to probation, and it was violated with new

4  convictions.  I think there is some accurate -- there are some

5  cases that provide some close comparisons.  I know that this

6  Court is familiar with U.S. v. Matthew Mazzocco,

7  M-a-z-z-o-c-c-o.

8         THE COURT:  I am.

9         MR. KIOK:  Which is 21-CR-54, where that defendant

10  went into the spouse's lounge, another sensitive space at the

11  Capitol, it's not normally open to the public, and that

12  defendant, who had no criminal history, also admonished other

13  rioters not to break things, and this Court sentenced him to

14  45 days.  I think that comparing that case to Mr. Hopkins

15  here, where Mr. Hopkins entered twice, was in the sensitive

16  space and has a significant criminal history, suggests that

17  Mr. Hopkins should have a sentence greater than that of

18  Mr. Mazzocco's.

19         I'll also note again, as I mentioned in my memo, the

20  cases of Derek Jancart and Eric Rah, J-a-n-c-a-r-t, and Rah is

21  R-a-h, which is 21-CR-148, which was before Judge Boasberg.

22  There, those defendants each had some -- I think one and two

23  misdemeanor convictions, respectively.  And the defendant,

24  Jancart, had also been a Air Force veteran.  They also

25  received 45 days each.  They went into the Speaker's

1    conference room, another sensitive space.

2         I would also note for -- as another comparison,

3    another case that I know the Court is familiar with, case of

4    United States versus Edward Hemenway, H-e-m-e-n-w-a-y,

5    21-CR-49.  This Court gave Mr. Hemenway a 45-day sentence in

6    part for his significant criminal history, which included a

7    sexual battery conviction.  But Mr. Hemenway, unlike

8    Mr. Hopkins here, didn't go into any private spaces, was in

9    the Capitol for 17 minutes, and expressed remorse.

10        So here, Your Honor, I think we have a combination

11   of two sets of factors.  We have serious conduct going into --

12   going into private, sensitive spaces, and then we have this

13   serious criminal history, where the defendant has been

14   convicted of serious crimes for which he received a seven-year

15   period of incarceration, concurrent with a separate charge,

16   where he received a four-year concurrent period of

17   incarceration.  All these separate charges where he violated

18   probation.

19        So for those reasons, Your Honor, the government

20   seeks a period of four months incarceration with 36 months of

21   probation.  And I reserve argument on the government's

22   opposition to probation's recommendation for jurisdiction

23   transfer.

24        Thank you, Your Honor.

25        THE COURT:  Thank you, Mr. Kiok.

1              Mr. Osgood.

2              MR. OSGOOD:  Thank you, Your Honor.  I'll notice --

3      I notice from Mr. Kiok's argument that he fails to even give

4      any mention whatsoever of the intervening period after

5      incarceration and today.  Mr. Hopkins sits before you, Your

6      Honor, as a changed man.  And I know that you have a history

7      of being a public defender at one point in your career.  And

8      like me, I was a federal prosecutor for 35 years, and I've

9      done defense work for, I hate to say, 25 years.  One of the

10     things that strikes me as just absolutely sets this case apart

11     from the others is we have a man here who is truly

12     rehabilitated.

13             Rehabilitation doesn't seem to be in Mr. Kiok's

14     vocabulary.  True, Mr. Hopkins had a very troubled youth.  He

15     is the classic example of a person that you thought, as the

16     judges -- one of the judges in this district likes to say,

17     you're just doing life on the installment plan, buddy, you

18     know, you're going to be back here time after time after time

19     after time.

20             Mr. Hopkins went off to prison with a troubled

21     background and troubled youth.  And he, on -- and as he says

22     in his letter, on the first or second week of incarceration,

23     he said, this is not who I am and what I'm going to be, and

24     this is not what I want in my life.  And he literally made

25     maximum use and benefit of the period of incarceration.  He

1  took every program there was.  He worked hard at changing

2  himself.  And he said, I've got to come out and be a changed

3  person.

4           He did that.  He came out as a registered sex

5  offender under the Act, and he managed to find a job.  And I

6  have plenty of clients, and I know you've had them too, Your

7  Honor, oh, I can't get a job because I got a burglary

8  conviction or I've got a car theft conviction.  Mr. Hopkins is

9  a registered sex offender, managed to find a job and go to

10 work virtually the second he got out, and he has worked

11 continuously since then.  And he built a business from scratch

12 after he learned how to install windows and do framing and do

13 all the other things.  He has a viable business.  He has,

14 under his supervision, 10 or 15 subcontractors.  He has

15 several employees.  And he's constantly at work.  He works day

16 and night.

17          He's a different person.  He's trying to

18 re-establish his contact with his children.  He has a woman he

19 married and then they didn't get along that well living

20 together and they got divorced.  But she still works for him

21 as his right-hand assistant.  And that's Ms. Angie.  And she

22 speaks the best of him and says he's a wonderful guy.  He was

23 wonderful to her daughter.  You have a letter from her

24 daughter, puts absolute trust in him and says he is not the

25 Kasey Hopkins that existed prior to the time he went into

1    prison.

2          As I said, in all the time I've been doing this on

3    both sides of the fence, it's a rare, rare, rare situation

4    when I get a client who has actually changed as a result of

5    incarceration, got something out of it, and made something of

6    himself and went off as a productive -- and we always say

7    productive citizen, kind of a cliche, but he is truly the

8    productive citizen right now.  He goes to work every day.  He

9    takes care of people.  He does charity work when the time --

10   when the opportunity arises from time to time.

11         So that was one of the reasons I recommended a day

12   in jail and I suggested in my memo, a substantial fine.  I

13   note, in looking at the history of the other cases, the

14   January 6th cases, there haven't been large fines imposed.

15   Punishing a businessman, one of the ways you punish a

16   businessman is you take his profits away.  And I suggest to

17   the Court that maybe this is the situation where we don't put

18   him out of business, we don't take him away from his

19   subcontractors, we don't take him away from his existing jobs.

20   We instead give him a day in jail for the time he's already

21   served when he got arrested or he tried to self-surrender him

22   and they arrested him outside the courthouse when we were

23   walking in.  Which is unusual, in my view, but be that as it

24   may.

25         Fine him $5,000, the maximum you can fine.  Give him

1    a day in jail and fine him.  That will be significant

2    punishment.  And that's more punishment than any other

3    defendant in this case, looking at the sentencing history so

4    far that I've had access to.  Nobody else has been fined that

5    amount.  I think the fine's about a thousand dollars.

6           I would suggest this is the classic case where we --

7    in this case, send you a message your conduct was wrong.  And

8    I think he's told you, he knows his conduct is wrong.  He's

9    going to address the Court here soon.  He regrets the day he

10   flew out there, Your Honor.  He regrets he didn't leave right

11   there on the spot and come back to Kansas City.  This

12   conversation on Facebook was just that.  It's social media

13   stuff, and it was the other person making the more insidious

14   comments, not him.  He was just kind of going along.

15          But be that as it may, that's not his character.

16   That's not the Kasey Hopkins sitting in my office here today.

17   I've come to know him pretty well.  I've come to know his

18   family.  Never met him before he hired me to do this case

19   and -- but I can say I believe everything he said in his

20   sentencing memo was true.  I've looked into his background.

21   I've looked at his business.  I'm confident you're never going

22   to see him again commit another act of any kind whatsoever.

23   Not even spitting on a sidewalk.

24          He's a good man.  And put him in prison at this

25   point for any length of time will significantly disrupt his

1    business.  And I'm afraid that it could hurt his business, and

2    we want people who commit crimes to do well when they get out.

3    He's done well other than this glitch 20 years after, you

4    know, a major crime.  He's got a significant history of being

5    a good citizen and a good community member.

6              So I would suggest a day in jail and, you know, give

7    him $5,000 fine.  That would be equally as much punishment as

8    these 15 to 30, 40 days incarceration.  So I think he is the

9    classic example here where that's maybe the course of action

10   we should take.  So I'd ask the Court to give him a day in

11   jail and fine him the maximum amount of fine.

12             THE COURT:  Thank you, Mr. Osgood.

13             Mr. Hopkins, I told you when you pleaded guilty that

14   you have an absolute right to speak or not to speak.  I've

15   read your letter.  And I've read the other letters in support

16   of you.  So it is totally your decision whether you'd like to

17   say something now or not.  What would you like to do?

18             THE DEFENDANT:  (Inaudible.)

19             MR. OSGOOD:  Go ahead.

20             He's nervous, Your Honor.

21             THE COURT:  I totally understand.  Take your time.

22   And like I said, I told you at your plea, if you didn't want

23   to speak, I wouldn't hold it against you or take that as a

24   sign of lack of remorse or anything.  You've written a

25   eloquent letter.  But this is your opportunity to speak, and I

1    want to make sure that if you want to, you take it.  Take your

2    time.  It's fine.

3              MR. OSGOOD:  Please, because the judge hasn't heard

4    you speak other than at the plea.

5              THE COURT:  You can say as little or as much as you

6    want.  It's totally up to you.  You're not a lawyer, you're

7    not a trained speaker, so I'm not going to hold you to that

8    standard.  You've got Mr. Osgood there for that.

9              MR. OSGOOD:  He made a heartfelt speech to me before

10   the hearing.  I think he's just a little nervous.

11             THE COURT:  Sure.  I totally understand.

12             MR. OSGOOD:  Please tell Your Honor what you told

13   me.  I mean, please, Mr. Hopkins.

14             THE DEFENDANT:  Your Honor, Mr. Kiok, and, you know,

15   young lady with Ms. Reichler, I'm ridiculously ashamed sitting

16   here right now.  However, I am very proud to say that I do not

17   sit here as a man that resembles my past.  I'm proud that I

18   can sit here before all of you and say that.  I'm very ashamed

19   that I'm sitting here.  If there was any takeaway from

20   January 6th, it was that I allowed myself to get caught up and

21   bring fear to people, something that goes against everything I

22   am.

23             I can say that through that experience, I understand

24   that the mob mentality is a very, very real thing.  And I can

25   say that punishing me, I can understand that, but punishing

1  those who have helped me get where I'm at is something that

2  I -- a weight that I'll bear on my shoulders if it happens.

3  I've had many people work very, very hard to get where my

4  company is.  I've worked tirelessly to make sure that all

5  those people who trusted me were glad that they did.

6          And yes, Mr. Kiok, as a ex-felon with a pretty bad

7  crime, pretty severe, I should not be in the position I'm in

8  today.  I should not be (INAUDIBLE.)  I should not have an

9  extensive list of people in my past from prison till now that

10 trust me.  There are many things that are -- have been against

11 me.  I don't say that for any other reason than to say that

12 I'm proud that they never gave up.

13         So, Mr. Kiok, yes, sir, I do have a pretty extensive

14 driving record, driving on suspended licenses a lot.  And I do

15 have a prison sentence, and I spent seven years incarcerated

16 for.  But from that day until this, I still think about it.

17 And it is a motivator to make sure that I continue to move

18 forward.  And anybody's path I cross that I can help or assist

19 in any single way, that I will try and do my best to make sure

20 that after meeting me, they've left meeting me glad I was in

21 their life and not more so than not.

22         I don't know what else to say, so thank you all for

23 listening.  Your Honor.

24         THE COURT:  Thank you, Mr. Hopkins.  I realize that

25 was difficult.

1           Now is the difficult part for me, because I have to

2      impose a sentence in keeping with the factors set forth in

3      18 U.S.C. Section 3553(a) and ensure I impose a sentence

4      sufficient, but not greater than necessary, to comply with the

5      purposes of sentencing.  The purposes of sentencing include

6      the need for the sentence imposed to reflect the seriousness

7      of the offense, to promote respect for the law, to provide

8      just punishment.  It should deter criminal conduct, protect

9      the public from future crimes, and promote rehabilitation.  I

10     also have to consider the nature and circumstances of the

11     crime, the defendant's history and characteristics, the types

12     of sentences available, the need to avoid unwarranted sentence

13     disparity, and the need to provide restitution.  I've

14     considered all those factors.  And this is an unusual case,

15     because I think all the factors are at play here.

16          With regard to the nature of the offense, I'm not

17     going to go on at length.  I've spoken frequently about the

18     seriousness of what happened on January 6th that, in this

19     Court's opinion, it was no less than an attempt to overthrow

20     the government, to halt the lawful transfer of power that has

21     gone on uninterrupted in this country since its founding.  And

22     it almost succeeded because a group of people wouldn't accept,

23     for varying reasons, including, frankly, listening to some

24     highly unreliable sources of information or just being stuck

25     down their own -- down some rabbit hole or listening -- being

1    in some echo chamber of misinformation, who believe that

2    because their guy had lost the election, could not have been

3    legitimate.

4            I often point to other elections, including one that

5    was ultimately decided by the U.S. Supreme Court, where the

6    people whose candidate lost, the day after that decision

7    went -- came down, went about their business, went to their

8    jobs, continued to participate in the democratic process and

9    waited for the next election.  But not on January 6th.  What a

10   group of people who decided that they were going to take it.

11   And they fought with law enforcement, who were so outnumbered

12   that after -- and were so concerned about the fact that

13   thousands of people were coming into that building with

14   backpacks and knapsacks and possible weapons, they couldn't

15   everyone engage with them, came into that building, terrorized

16   the occupants of the building, looted the building, desecrated

17   the building, treated it with absolute and utter disrespect,

18   before finally being cleared out.  Put up nooses, gallows,

19   defecated in the building, marched around, screamed out,

20   "Where's Nancy" for a 78-year-old grandmother.  Went into

21   Senate office buildings, put their feet up, and generally

22   showed an absolute utter lack of respect for our country.

23           And you participated in that.  And that's my take on

24   the seriousness of the offense.  This may be a misdemeanor,

25   you may have pleaded to a misdemeanor, but that does not fully

1    encompass or describe how serious the actions of that mob were

2    on January 6th.  When you solicited another individual to

3    travel with you, you discussed the potential of civil war and

4    proposed forming a group of proud felons for Trump.  You know,

5    there's some posturing that takes place on social media, as

6    your lawyer points out, but it certainly indicates that you

7    were aware of the possibility of violence and were not cowed

8    by it.

9          After you attended the rally -- and I emphasize this

10   in every case, I don't care who you support, I don't care what

11   your political persuasion are.  This is a free country.

12   Everybody's free to believe and support who they want to

13   believe and support and say what they want to say, no matter

14   how offensive I might find it.  That's one of the freedoms

15   that we cherish in this country.

16          So, you know, you go to the rally, but then you head

17   down to the Capitol, and that's where -- that's what you're

18   being punished for.  Because at 2:54, you entered through a

19   fire door.  There's no way that you could not have known that

20   that was not a legal entry.  You knew you were not supposed to

21   be going into the building.  You left and then you went back

22   in the building.  I can understand you going in, realizing,

23   oh, this is -- this is bad, leaving, and then you leave.  But

24   you didn't leave.  You hung around and then you went back in.

25          And that's what I take so seriously.  Because

1    there's an act of deliberation involved in that.  You saw what
2    was going on inside.  Having left the building, you saw
3    that -- you know, you smelled the tear gas, you heard the
4    alarm.  This was not a peaceful protest.  This wasn't just
5    people walking in and walking around and looking and saying,
6    oh, boy, I'm in the Capitol.  You came back and then you went
7    into an office, which, by all the evidence, indicates you had
8    to have known was an office.  And you're taking pictures and
9    throwing in your lot with the people who are disrespecting and
10   occupying that office.  And even after you left Senator
11   Merkley's office, you continued walking through the Capitol,
12   you walked through the crypt, past the House wing door, back
13   through the crypt and eventually through the Senate wing door
14   at approximately 3:15.  So this -- your conduct was serious
15   and clearly intentional and knowing.
16           Turning to your characteristics as an offender, I
17   agree with Mr. Osgood.  Mr. Osgood has been doing this work
18   for a long, long time.  He's seen a lot of people go to jail
19   and come out, and I have too.  And I take Mr. Osgood's point
20   in that you really -- I mean, you really appeared to
21   rehabilitate yourself.  It's not easy getting a job with a
22   sexual offender.  I mean, felon is hard enough.  Sexual
23   offender label is really hard.  And I know that.
24           And you know, let's be frank here, the crime for
25   which you were imprisoned was one of the more disturbing

1    sexual assaults I've read about in a long time.  But it was

2    20 years ago.  I mean, you -- you brutalized a young woman.

3    You forced oral sodomy on her.  You urinated in her mouth.

4    Those kinds of actions usually indicate a really deep-seeded

5    desire to control and abuse and humiliate.

6          And I am, like your lawyer, impressed with the fact

7    that you underwent some personal transformation and growth

8    during the time you were incarcerated, that led you to be on

9    the path to try to be a better man.  And I think you, in a

10   great -- in a large part succeeded.

11         I don't see in your letter to me any mention of the

12   victim of the crime for which you went to jail.  And I'm

13   not -- you know, or an understanding of the terror that you

14   inflicted on her.  But that was 20 years ago.  And I agree

15   with Mr. Osgood that you have really shown yourself to be a

16   changed person.  Not just in your ability to work, to start

17   your own business, provide employment for others, but in your

18   ability to form relationships, take on a stepdaughter who had

19   issues, contribute to your community.  I mean, that is

20   something for which you should be rightfully proud, and

21   nothing will take away from that.

22         But knowing that, knowing your previous history,

23   knowing what you -- how far you had come, Mr. Hopkins, the

24   fact that you got on that plane with an awareness that this

25   might -- that this rally, this Stop the Steal might turn into

1    something resembling a civil conflict, really boggles my mind,

2    truthfully.  You have so much to lose.

3           And then having attended that rally and even

4    walking, getting caught up with the crowd, walking onto the

5    Capitol, that you would make the decision to cross the line,

6    literally and figuratively, and going into that building not

7    once but twice is really, it's really amazing and very

8    disappointing.  Once might be for a few minutes, you know,

9    it's definitely something, but it's one thing.  Twice, and to

10   go in the second time into a Senate office and film people

11   who -- just the most disrespectful and disgusting behavior

12   that they were engaging in, and proud of it, is really -- is

13   really concerning to this Court.

14          I've already talked about your characteristics as an

15   offender.  It's to your credit that you have managed to

16   develop a close relationship with your stepdaughter and your

17   grandchild.  I haven't seen a lot of mention about your

18   relationship with your two children from your first marriage.

19   I hope and assume that is -- those are relationships you are

20   working on.  And that is neither here nor there as far as

21   punishment in this case is concerned.

22          The matter of restitution, you've agreed to pay

23   restitution.  I hear Mr. Osgood's argument about not putting

24   your business in jeopardy or putting the people who rely on

25   you for their employment in jeopardy.  These things have

1    ripple effects.  But I don't think a fine is sufficient in

2    this case.  A fine implies that you can pay your way out of

3    this.  And I don't think that that is an appropriate

4    consequence for what you did in this case, especially since

5    you should have known better.  You had more to risk.  You had

6    more to lose in every sense of the word, including your

7    business and your family.  But in terms of your record, you

8    knew better.  You're not some 66-year-old grandma wandering

9    around for ten minutes in the Capitol.  And I've had people

10   like that in front of me.

11          I also have to consider the need to avoid sentencing

12   disparity.  I consider that in every case.  I do -- and I do

13   believe that the cases on January 6th are somewhat different

14   from other types of misdemeanors, and I compare them among

15   each other.  In United States versus Mazzacco, I did give

16   Mr. Mazzacco 45 days of imprisonment.  He was in the building

17   for approximately 12 minutes.  He didn't go into any offices.

18   He had no prior conviction.  He only went in once.  I've given

19   anywhere from 10 days to 63 months.  And I do that because --

20   the range is so wide because I consider every single case

21   individually and every single defendant individually.

22          As Mr. Osgood knows, it's very easy to just sort of

23   be classified as a number and a set of offenses in this

24   system, and I try not to do that.  This is a tough case,

25   because I do believe in redemption.  I do believe that each of

1  us -- none of us is the worst thing we've ever done.  You're

2  not the worst thing you ever did.  You did a horrendous thing

3  and you came back from it, and you made yourself into, as

4  Mr. Osgood said, a productive citizen.  And that is no small

5  feat.  And you are to be commended for that, and you will

6  never be -- have that -- you'll never have taken away from

7  you, because I think you've established that.

8           One of the ways we show ourselves and our character

9  is how we come back from mistakes that we make.  And you've

10  shown yourself to be somebody who did that.  And so it's

11  mystifying to me why you chose to break the law again.  I'm

12  sure there are probably days it's mystifying to you and to

13  people who know you.  You talked about mob mentality, and

14  you're absolutely right, we do things when we're in a group

15  and emotions are running high that we would never do on our

16  own.  And I think you are paying the price for that and

17  understanding the real danger of that.

18           But that all being said, I do not agree that a

19  sentence of a day in prison and a fine is appropriate

20  punishment in this case.  And having considered all of the

21  factors -- and I will say that I disagree with probation

22  office's recommendation.  I find it out of line with other

23  cases in this court, not only that I've looked at but that

24  other judges have looked at, and I just -- I don't agree with

25  it.

1          Having considered all the factors, the Court agrees

2     with the government and believes that a penalty of four months

3     is sufficient but not greater than necessary.  Therefore,

4     based on my consideration of all the 3553(a) factors, I will

5     now state the sentence to be imposed.  It is the judgment of

6     the Court that you, Kasey Hopkins, are hereby committed to the

7     custody of the Bureau of Prisons for incarceration term of

8     four months and sentenced to a period of probation for

9     24 months.  You are -- I'm not going to complete -- to impose

10    a period of community service, because I believe you are

11    already involved in your community, and that aspect of -- is

12    not necessary.

13          You're further sentenced to pay $500 in restitution.

14    The $10 special assessment is immediately payable to the Clerk

15    of the Court for the U.S. District Court of the District of

16    Columbia.  Within 30 days of any change of address, you shall

17    notify the Clerk of the Court of the change until such time as

18    the financial obligation is paid in full.

19          I will say one thing I noticed in the presentence

20    report was that you appeared, Mr. -- I don't know if this is a

21    technical glitch.  Mr. Hopkins, you appeared to have a --

22    still be in arrears for back child support, I think in the

23    amount of $60.  That was striking to me, because you appear to

24    be living a very generous life, you know, contributing to your

25    community and contributing to your grandson and your

```
1   stepdaughter.
2              Yes, Mr. Hopkins.
3              THE DEFENDANT:  I've been paying that back for
4   years, all arrearages.  It is -- I've -- every single month
5   has been paid towards that.
6              THE COURT:  All right.  Well, if it's only $60 left,
7   I suggest you pay it, but that's just a side comment.
8              Because this is four months, some -- you may go to a
9   Bureau of Prisons institution, even though it's relatively
10  short as far as federal sentences are concerned.
11             Mr. Osgood, do you have a recommendation or a
12  request for a recommendation?
13             MR. OSGOOD:  Well, I would hope that you would allow
14  him to self-surrender to the U.S. Marshals in Tennessee.
15             THE COURT:  Yes, I'm going to do that.
16             MR. OSGOOD:  I have called them and can't get a
17  straight answer as to whether or not they -- I had hoped,
18  envisioned a shorter sentence with weekend service.
19  Obviously, this can't be weekend service.
20             THE COURT:  No.
21             MR. OSGOOD:  So I'm assuming they will just get a
22  designation in this district the way that we normally do.
23  They'll contact BOB.  It takes about 30 to 45 days to get a
24  designation in this district, Your Honor.
25             THE COURT:  Yeah.  I'll give you as much time as he
```

1    needs to self-surrender, but I'm just -- is there a particular

2    institution, or you just want the closest one to home?

3          MR. OSGOOD:  Well, I prefer the Yankton, South

4    Dakota camp, is one of the ones that a lot of similar cases go

5    to in this district.  I would just say leave it up to BOP.

6    They're going to send him to a minimum security camp, I'm

7    sure.

8          THE COURT:  They will.  They will.  All right.

9    Well, I'll leave that to the Bureau of Prisons to designate.

10         Mr. Hopkins, while on probation, you must abide by

11   the following mandatory conditions:  You must not commit

12   another federal, state, or local crime.  You must not

13   unlawfully possess a controlled substance.  You must take two

14   drug tests after your release.  And then if those tests are

15   negative, you're relieved from all further drug testing and

16   drug treatment obligations.  You must pay the special

17   assessment imposed in accordance with 18 U.S.C. Section 3013,

18   and you must notify the Court of any material change in your

19   economic circumstances that might affect your ability to pay

20   restitution, fines, or special assessments.

21         Any objection to the conditions of probation,

22   Mr. Kiok?

23         MR. KIOK:  No, Your Honor.

24         THE COURT:  Mr. Osgood?

25         MR. OSGOOD:  No, Your Honor.

1          THE COURT:  Okay.  The probation office shall
2     release the presentence investigation report to all
3     appropriate agencies in order to execute the sentence of the
4     Court.  Pursuant to 18 U.S.C. Section 3742, Mr. Hopkins, you
5     have the right to appeal the sentence imposed by this Court,
6     subject to certain rights of appeal you waived as part of your
7     plea agreement in this case.  If you choose to appeal, you
8     must file an appeal within 14 days after the Court enters
9     judgment.  If you are unable to afford the costs of an appeal,
10    you may request permission from the Court to file an appeal
11    without cost to you.
12          With regard to the transfer of jurisdiction, I will
13    not allow transfer of jurisdiction.  I'll allow transfer of
14    supervision to Mr. Hopkins's home district so he can be
15    supervised by the probation office in his home district, but
16    should there be any violation of a condition of probation, I
17    want that to come to me.
18          Mr. Hopkins, should you violate any of the
19    conditions of your probation, you could be found in violation
20    of your probation, and you could be subject to further
21    incarceration.  I don't want that to happen.  I doubt strongly
22    that that will happen, but I just want to let you know you
23    will be supervised by the probation office in your home
24    district.
25          Because Mr. Hopkins entered a plea to a one-count

1    information -- is that correct, Mr. Kiok, that there are no

2    remaining counts to dismiss?

3              MR. KIOK:  No, Your Honor, the defendant pled to

4    Count 4 of an amended --

5              THE COURT:  Oh, Count 4.  I'm sorry.

6              MR. KIOK:  The government would have an application

7    to dismiss the remaining.

8              THE COURT:  I'm sorry.

9              MR. KIOK:  -- to dismiss the remaining counts.

10             THE COURT:  I'm sorry.  I have that wrong.  The

11   motion is granted.  Remaining counts of the information are

12   dismissed.

13             Now, with regard to self-surrender, as I told you,

14   Mr. Osgood, it is my intention, I am allowing Mr. Hopkins to

15   self-surrender.  And I'm allowing him to do that because he's

16   been compliant with his conditions of release.  I always tell

17   defendants that, that they should comply for a number of

18   reasons, but one of them is this, that I trust you will --

19   you've always appeared on time and you've been in compliance,

20   and therefore I will allow you to turn yourself in.  Your

21   lawyer will arrange with probation and the Bureau of Prisons

22   for the date that -- on which you -- you're to turn yourself

23   in.

24             On occasion, I've been asked, I've received a

25   motion, usually unopposed, for an extension of that time for

1    various personal or family reasons.  I'll entertain that in

2    your case if you need extra time to arrange for business

3    matters to be dealt with.  But I'll caution you that having

4    been sentenced, again, if you pick up any new charges before

5    self-surrender, those charges could be subject to enhanced

6    penalties.  If you violate the conditions of your release, you

7    could be held pending -- and start serving your sentence

8    immediately.  And if you fail to surrender on the authorized

9    day without lawful permission from the Court, you could be

10   charged with a crime of failure to appear and subject to an

11   enhanced penalty consecutive to this.

12          So the long and short of all of this is continue to

13   comply with your conditions of release, turn yourself on the

14   day that has been designated for your surrender.

15          MR. OSGOOD:  Your Honor, obviously this is a bit

16   unusual in a -- procedurally.  Will the judgment go to the

17   Marshals in D.C. and they will ask for a designation

18   or will --

19          THE COURT:  I don't think it goes to the Marshals.

20          Ms. Reichler, does this go -- where does this go

21   from here?  I'm not sure.

22          MS. REICHLER:  To Bureau of Prisons.  They'll have

23   to designate him and then notify him.  If he could hang on the

24   line after, I'm going to go through the voluntary surrender

25   instructions for him.

```
 1            THE COURT:  Yeah, I don't think it goes to the
 2     Marshals.
 3            All right.  Mr. -- any objections other than those
 4     already stated on the record to the sentence?
 5            Mr. Kiok?
 6            MR. KIOK:  No, Your Honor.
 7            THE COURT:  Mr. Osgood?
 8            MR. OSGOOD:  No.  Do you set a drop date, drop-dead
 9     date to show up at the Marshals then?
10            THE COURT:  I don't.  I don't.  I haven't had -- I
11     haven't found that necessary.
12            MR. OSGOOD:  Okay.
13            THE COURT:  You can work it out with the Bureau of
14     Prisons.  I'm flexible in that, in that regard.
15            MR. OSGOOD:  Very good.
16            THE COURT:  Mr. Hopkins, I know that you may be
17     disappointed in this sentence, and disappointed in yourself,
18     and that's understandable.  And if you are, that's to your
19     credit.  Like I said, a very wise man named -- I know what his
20     name is -- Bryan Stevenson.  I highly recommend his book, *Just
21     Mercy*, if you haven't read it.  We're not the worst thing that
22     we've ever done, and that is very true in your case.  You've
23     made some big mistakes.  You did some bad things when you were
24     young, and you came back from them and you made a life that
25     anybody would be proud of.
```

1          Then you made another mistake.  Nowhere near on the

2     magnitude of what you did when you were young, but again,

3     you've got children, and grandchildren looking at you.  You've

4     got a community looking at you to see what you do.  And their

5     respect for you is not going to disappear because of what you

6     did.  And, in fact, it will probably grow if you come back

7     from this a wiser, stronger person.  And I think you will.  I

8     think you will.  So I wish you all the luck in the world, sir.

9     And I hope this isn't too big a hit to your business.  I don't

10    think it will be.  But good luck to you.

11          We're adjourned.

12          (The proceedings were concluded.)

13

14    I, Christine Asif, RPR, FCRR, do hereby certify that
      the foregoing is a correct transcript from the stenographic
      record of proceedings in the above-entitled matter.

15

16    _____/s/_____
                Christine T. Asif
                Official Court Reporter

17

18

19

20

21

22

23

24

25

```
 1     < Dates >.            32:14.              .                   13:8.
       January 6 6:5,      20001 1:49.         < 4 >.             above-entitled
 2        10:18.           2000s 18:10.        4 40:4,               43:16.
       January 6th         202 1:50.             40:5.            absolute
 3        10:17,           2023 1:11,          40 2:25, 5:17,        22:24,
          15:21,             3:22.               25:8.               25:14,
 4        23:14,           20530 1:30.         45 19:14,             29:17,
          26:20,           21-CR-148            19:25,               29:22.
 5        28:18, 29:9,       19:21.             34:16,            absolutely
          30:2,            21-CR-49             37:23.               21:10,
 6        34:13.             20:5.             45-day 20:5.          35:14.
       March 28th          21-CR-54           .                  abuse 32:5.
 7        3:22.              19:9.             < 5 >.             accept 5:5,
       $10 5:25,           22-0317-TSC        5104(e)(2)(g          28:22.
 8        6:19,              1:6.                2:25,            access 24:4.
          36:14.           22-317 2:6.           5:17.           accommodating
 9     $5,000 5:25,        24 36:9.           .                     2:13.
          23:25,           25 21:9.           < 6 >.             accordance
10        25:7.            2:54 30:18.        6 9:2.                38:17.
       $500 6:2,           .                  60 8:24.           accurate
11        6:18, 8:25,      .                  63 34:19.            19:4.
          36:13.           < 3 >.             64063 1:36.        accurately
12     $60 36:23,          3 10:5, 13:9,      6507 1:48.           6:8.
          37:6.              13:19,           66-year-old        acknowledge
13     .                     14:21,             34:8.              17:23.
       < 1 >.                15:8.            6700 1:29.         acknowledged
14     1 11:22,            30 25:8,           6th 15:17.            15:20,
          11:24.             36:16,           .                     17:25.
15     10 22:14,             37:23.           .                  Act 22:5,
          34:19.           3013 38:17.        < 7 >.                24:22,
16     112 1:35.           302 16:18,         78-year-old           31:1.
       11:08 a.m.             17:2,             29:20.           ACTION 1:5,
17        1:12.              17:5.            .                     2:6, 25:9.
       12 34:17.           333 1:47.          .                  actions 30:1,
18     14 39:8.            35 7:17,           < 9 >.                32:4.
       15 22:14,             21:8.            90s 18:10.         actually 7:25,
19        25:8.            354-3247          950 1:28.             23:4.
       17 20:9.              1:50.            _____/s/__     addition
20     18 6:7, 28:3,       3553(a 5:13,                            13:21.
          38:17,             28:3,            _____     additional
21        39:4.              36:4.              43:18.             18:12,
       1986 7:20.          36 6:17, 8:24,     .                     18:16.
22     .                     18:24,           .                  address 7:23,
       .                     20:20.           < A >.                8:19, 9:12,
23     < 2 >.              3663(a)(3          abide 38:10.          9:16, 24:9,
       2 10:5, 12:16,        6:7.            ability 32:16,         36:16.
24        15:5.            3742 39:4.          32:18,           adjourned
       20 14:5, 25:3,      3:15 31:14.         38:19.              43:11.
25        32:2,            3rd 1:35.          able 10:24,        admitted 12:3,
                           .                                        12:16,
```

12:18,
13:20.
admonished
19:12.
advance 11:21,
14:4.
Advancing
12:4, 12:5,
12:20.
affect
38:19.
afford 39:9.
afraid 25:1.
agencies
39:3.
ago 32:2,
32:14.
agree 7:9,
31:17,
32:14,
35:18,
35:24.
agreed 3:1,
6:2,
33:22.
agreement
3:11, 6:6,
6:7, 39:7.
agrees 36:1.
Ah 16:21.
ahead 17:17,
25:19.
Air 19:24.
alarm 31:4.
alert 13:11.
allocution
8:1, 8:13,
16:10.
allow 37:13,
39:13,
40:20.
allowed
26:20.
allowing
40:14,
40:15.
almost
28:22.
already 6:16,
6:21, 7:13,

23:20,
33:14,
36:11,
42:4.
amazing
33:7.
amended
40:4.
America 1:5,
2:7.
among 34:14.
amount 24:5,
25:11,
36:23.
Angie 3:16,
22:21.
answer
37:17.
ANTIFA.
10:9.
anybody 27:18,
42:25.
apart 21:10.
apologize
11:25.
apparent
14:11,
14:12.
appeal 8:11,
8:12, 39:5,
39:6, 39:7,
39:8, 39:9,
39:10.
appear 36:23,
41:10.
APPEARANCES
1:23.
appeared
31:20,
36:20,
36:21,
40:19.
appearing
2:11.
appears
11:11.
applicable
5:14,
5:19.
application

40:6.
apply 5:12,
8:18.
appreciate
8:15.
appropriate
8:20, 18:16,
34:3, 35:19,
39:3.
approximately
11:5, 12:20,
14:4, 31:14,
34:17.
April 10th
1:11.
Architect
6:3.
area 14:2.
areas 9:1.
argue 7:11.
arguing
16:20.
argument 9:1,
9:6, 9:12,
16:4, 16:7,
18:14,
18:23,
20:21, 21:3,
33:23.
arguments
18:1.
arises
23:10.
around 9:1,
11:19,
14:25,
15:14,
29:19,
30:24, 31:5,
34:9.
arrange 40:21,
41:2.
arrearages
37:4.
arrears
36:22.
arrested
15:20,
23:21,
23:22.

ashamed 26:15,
26:18.
Asif 1:43,
43:14,
43:19.
aspect
36:11.
assaults
32:1.
assessment
5:25, 6:19,
36:14,
38:17.
assessments
38:20.
assist
27:18.
assistant
22:21.
assume
33:19.
assuming
37:21.
attack
10:18.
attempt
28:19.
attended 30:9,
33:3.
Attorney 1:34,
4:13.
audible
13:12.
authority
7:20,
7:21.
authorize
5:23.
authorized
41:8.
available
28:12.
Avenue 1:28,
1:47.
avoid 28:12,
34:11.
aware 30:7.
awareness
32:24.
away 23:16,

23:18,
23:19,
32:21,
35:6.
.
.
< B >.
B-y-r-a-m
3:17.
back 12:8,
21:18,
24:11,
30:21,
30:24, 31:6,
31:12, 35:3,
35:9, 36:22,
37:3, 42:24,
43:6.
background
21:21,
24:20.
backpacks
29:14.
bad 27:6,
30:23,
42:23.
bag 10:10.
based 6:20,
7:1, 36:4.
battery
20:7.
bear 6:15,
27:2.
bears 15:25.
begin 9:11,
13:23.
beginning
18:9.
behalf 3:14.
behavior
33:11.
believe 7:1,
7:2, 17:10,
17:11,
17:21,
24:19, 29:1,
30:12,
30:13,
34:13,
34:25,

36:10.
believes
36:2.
benefit
21:25.
best 16:17,
22:22,
27:19.
better 10:2,
14:22, 32:9,
34:5,
34:8.
big 42:23,
43:9.
bit 41:15.
black 11:10,
12:9.
blue 11:18.
Boasberg
19:21.
BOB 37:23.
boggles
33:1.
book 42:20.
BOP 38:5.
boy 31:6.
break 19:13,
35:11.
briefly
10:19.
bring 15:18,
18:14,
26:21.
broadcast
3:5.
brutalized
32:2.
Bryan 42:20.
buddy 21:17.
building 2:24,
12:10,
12:13, 15:3,
29:13,
29:15,
29:16,
29:17,
29:19,
30:21,
30:22, 31:2,
33:6,

34:16.
buildings
29:21.
built 22:11.
Bureau 36:7,
37:9, 38:9,
40:21,
41:22,
42:13.
burglary
22:7.
business
22:11,
22:13,
23:18,
24:21, 25:1,
29:7, 32:17,
33:24, 34:7,
41:2,
43:9.
businessman
23:15,
23:16.
Byram 3:16.
.
< C >.
called
37:16.
camera
12:19.
camp 38:4,
38:6.
candidate
29:6.
Capitol 2:24,
5:17, 6:4,
6:5, 9:3,
10:19,
10:21,
15:15,
15:21,
15:22,
17:25,
19:11, 20:9,
30:17, 31:6,
31:11, 33:5,
34:9.
captioning
11:5.

car 22:8.
care 23:9,
30:10.
career 21:7.
carries
5:17.
case 4:14,
5:12, 5:13,
8:14, 19:14,
20:3, 21:10,
24:3, 24:6,
24:7, 24:18,
28:14,
30:10,
33:21, 34:2,
34:4, 34:12,
34:20,
34:24,
35:20, 39:7,
41:2,
42:22.
cases 19:5,
19:20,
23:13,
23:14,
34:13,
35:23,
38:4.
caught 26:20,
33:4.
caution
41:3.
center
14:15.
certain
39:6.
certainly
30:6.
certify
43:14.
chamber
29:1.
change 36:16,
36:17,
38:18.
changed 21:6,
22:2, 23:4,
32:16.
changing
22:1.

character
    24:15,
    35:8.
characteristic
    s 28:11,
    31:16,
    33:14.
charge 5:16,
    20:15.
charged
    41:10.
charges 18:20,
    20:17, 41:4,
    41:5.
charity
    23:9.
cherish
    30:15.
child 36:22.
children
    22:18,
    33:18,
    43:3.
choose 39:7.
chose 35:11.
Christine
    1:43, 43:14,
    43:19.
Chutkan 1:18,
    2:5.
circumstances
    5:6, 6:20,
    28:10,
    38:19.
cited 7:20,
    7:21.
citizen 23:7,
    23:8, 25:5,
    35:4.
City 10:8,
    24:11.
Civil 10:14,
    10:15, 30:3,
    33:1.
class 5:10.
classic 21:15,
    24:6,
    25:9.
classified
    34:23.

cleared
    29:18.
clearly
    31:15.
Clerk 6:3,
    36:14,
    36:17.
cliche 23:7.
client 16:11,
    16:13,
    17:11,
    23:4.
clients
    22:6.
clip 11:21,
    12:21,
    12:24,
    12:25.
close 17:14,
    19:5,
    33:16.
closed 11:5.
closest
    38:2.
Code 2:25.
COLUMBIA
    1:2.
Columbia 1:46,
    36:16.
combination
    18:17,
    18:18,
    18:21,
    20:10.
combine
    7:14.
coming 12:8,
    29:13.
commended
    35:5.
comment
    37:7.
comments
    24:14.
commit 24:22,
    25:2,
    38:11.
committed
    18:12,
    36:6.

community
    8:24, 25:5,
    32:19,
    36:10,
    36:11,
    36:25,
    43:4.
company
    27:4.
compare
    34:14.
comparing
    19:14.
comparison
    20:2.
comparisons
    19:5.
complete
    36:9.
compliance
    40:19.
compliant
    40:16.
comply 28:4,
    40:17,
    41:13.
concerned
    29:12,
    33:21,
    37:10.
concerning
    33:13.
concluded.
    43:12.
concurrent
    20:15,
    20:16.
condition
    39:16.
conditions
    38:11,
    38:21,
    39:19,
    40:16, 41:6,
    41:13.
conduct 9:2,
    9:10, 10:4,
    10:21,
    15:18, 18:2,
    18:18,

20:11, 24:7,
    24:8, 28:8,
    31:14.
conference
    3:1, 14:17,
    20:1.
confident
    24:21.
conflict
    33:1.
connection
    4:18.
consecutive
    41:11.
consequence
    34:4.
consider 5:13,
    7:15, 7:25,
    8:5, 8:8,
    16:19,
    28:10,
    34:11,
    34:12,
    34:20.
consideration
    36:4.
considered
    28:14,
    35:20,
    36:1.
considering
    9:18.
constantly
    22:15.
constitute
    7:21.
contact 22:18,
    37:23.
continue
    27:17,
    41:12.
continued
    29:8,
    31:11.
continues
    15:14.
continuing
    11:17,
    18:10.
continuously

22:11.
Contitution 1:47.
contra 7:21.
contribute 32:19.
contributing 36:24, 36:25.
control 32:5.
controlled 38:13.
controversy 8:2.
conversation 10:6, 10:13, 24:12.
convicted 20:14.
conviction 5:24, 20:7, 22:8, 34:18.
convictions 9:7, 9:9, 18:5, 18:8, 18:9, 18:11, 19:4, 19:23.
copy 16:23, 16:25, 17:2.
correct 40:1, 43:15.
cost 39:11.
costs 39:9.
Counsel 2:4, 6:8.
Count 40:4, 40:5.
country 28:21, 29:22, 30:11, 30:15.
counts 40:2, 40:9, 40:11.
course 25:9.
courthouse

23:22.
cowed 30:7.
credit 33:15, 42:19.
crime 25:4, 27:7, 28:11, 31:24, 32:12, 38:12, 41:10.
crimes 18:12, 20:14, 25:2, 28:9.
CRIMINAL 1:5, 2:6, 9:7, 18:4, 18:5, 18:7, 18:9, 18:17, 18:22, 19:1, 19:12, 19:16, 20:6, 20:13, 28:8.
criteria 7:18.
cross 27:18, 33:5.
crowd 33:4.
crypt 31:12, 31:13.
custody 36:7.
.
.
< D >.
Dakota 38:4.
damages 6:4.
danger 35:17.
date 40:22, 42:8, 42:9.
daughter 22:23, 22:24.
day 7:7, 22:15, 23:8, 23:11, 23:20, 24:1, 24:9, 25:6,

25:10, 27:16, 29:6, 35:19, 41:9, 41:14.
days 19:14, 19:25, 25:8, 34:16, 34:19, 35:12, 36:16, 37:23, 39:8.
DC 1:30.
dealt 41:3.
debrief 17:23.
debris 11:20.
decided 29:5, 29:10.
decision 6:15, 25:16, 29:6, 33:5.
deep-seeded 32:4.
defecated 29:19.
defendants 19:22, 40:17.
defender 21:7.
defense 21:9.
definitely 33:9.
deliberation 31:1.
democratic 29:8.
demonstrating 2:24, 5:16.
Department 1:26, 3:10, 4:17.
depends 9:23.
Derek 19:20.
describe

30:1.
description 17:11.
desecrated 29:16.
designate 38:9, 41:23.
designated 41:14.
designation 37:22, 37:24, 41:17.
desire 32:5.
deter 28:8.
deterrence 18:15.
develop 33:16.
different 22:17, 34:13.
difficult 27:25, 28:1.
disagree 7:11, 35:21.
disappear 43:5.
disappointed 42:17.
disappointing 33:8.
disbursement 6:3.
discuss 6:14.
discussed 4:22, 30:3.
disgusting 33:11.
dismiss 40:2, 40:7, 40:9.
dismissed 40:12.
disparity 28:13,

```
34:12.              28:25, 29:7,     enforcement        29:15.
disputed            30:17.            29:11.           everything
  4:24.            driving           engage             24:19,
disrespect          27:14.            29:15.            26:21.
  29:17.           drop 42:8.        engaging          evidence
disrespectful      drop-dead          33:12.            11:25,
  33:11.            42:8.            enhanced 41:5,      12:17,
disrespecting      drug 38:14,        41:11.            13:19, 16:5,
  31:9.             38:15,           enough 4:16,        16:17,
disrupt             38:16.            31:22.            31:7.
  24:25.           during 17:12,     ensure 28:3.      evidentiary
District 1:1,       32:8.            enter 11:6,         4:4.
  1:2, 1:19,       .                  14:3,            ex-felon
  1:45, 1:46,      .                  15:6.             27:6.
  7:14, 8:3,       < E >.            entered 9:3,      example 21:15,
  8:7, 9:22,       earlier            9:4, 10:21,        25:9.
  21:16,            11:25.            10:22, 18:2,     excuse 14:1.
  36:15,           early 18:10.       18:3, 19:15,     execute
  37:22,           easy 31:21,        30:18,            39:3.
  37:24, 38:5,      34:22.            39:25.           Exhibit 11:22,
  39:14,           echo 29:1.        entering           11:23,
  39:15,           economic           13:14,            11:24,
  39:24.            38:19.            18:21.            12:15,
disturbing         Edward 20:4.      enters 12:11,      12:16, 13:7,
  31:25.           effect 7:20.       39:8.             13:9, 13:19,
Division           effects          entertain          14:21, 15:5,
  1:27.             34:1.             41:1.             15:8.
divorced           eight 12:5.      entrance          exhibits
  22:20.           either 5:5,        11:16.            4:6.
document            15:23.          entry 15:3,        existed
  16:4.            election 29:2,     30:20.            22:25.
doing 11:25,        29:9.           envisioned        existing
  21:17, 23:2,     elections          37:18.            23:19.
  31:17.            29:4.           equally           expecting
dollar 6:18.       eligible           25:7.             4:3.
dollars             5:19.           Eric 19:20.       experience
  24:5.            eloquent         especially         26:23.
done 21:9,          25:25.            34:4.            expletives
  25:3, 35:1,      emotions         Esquire 1:25,      13:22.
  42:22.            35:15.            1:33.            expressed
door 12:20,        emphasize        established        20:9.
  12:21,            18:2,             35:7.            expressing
  12:24,            30:9.           events             10:11.
  15:16,           employees          10:18.           expression
  30:19,            22:15.          eventually         10:12.
  31:12,           employment         31:13.           extension
  31:13.            32:17,          Everybody          40:25.
doors 15:6.         33:25.            30:12.           extensive
doubt 39:21.       encompass        everyone 2:12,      18:7, 27:9,
down 13:3,          30:1.             3:3, 10:23,       27:13.
```

extra 2:14,
   41:2.
.
.
< F >.
Facebook 10:6,
   24:12.
fact 4:24,
   5:8, 9:3,
   29:12, 32:6,
   32:24,
   43:6.
factors 5:13,
   6:15, 20:11,
   28:2, 28:14,
   28:15,
   35:21, 36:1,
   36:4.
facts 5:7,
   6:20,
   15:13.
factual 3:25,
   5:1, 5:5.
fail 41:8.
fails 21:3.
failure
   41:10.
familiar
   10:20, 19:6,
   20:3.
family 24:18,
   34:7,
   41:1.
far 16:13,
   24:4, 32:23,
   33:20,
   37:10.
fast 11:21.
FBI 15:19,
   15:21,
   16:11,
   16:25, 17:1,
   17:4, 17:12,
   17:22,
   17:24.
FCRR 1:43,
   43:14.
FD 16:18,
   17:5.
fear 26:21.

feat 35:5.
Federal 3:4,
   7:17, 7:19,
   21:8, 37:10,
   38:12.
feel 4:16.
feet 29:21.
felon 31:22.
felons 30:4.
fence 23:3.
few 12:13,
   33:8.
figuratively
   33:6.
file 39:8,
   39:10.
filed 3:21,
   4:18.
film 11:18,
   33:10.
final 3:20,
   6:15.
finally
   29:18.
financial
   36:18.
find 15:24,
   22:5, 22:9,
   30:14,
   35:22.
finding 8:4.
findings 3:23,
   5:8.
Fine 4:8, 4:9,
   5:24, 6:18,
   23:12,
   23:25, 24:1,
   24:5, 25:7,
   25:11, 26:2,
   34:1, 34:2,
   35:19.
fined 24:4.
fines 23:14,
   38:20.
finish 7:7.
fire 30:19.
first 9:1,
   10:22,
   10:23,
   15:10,

16:25,
   21:22,
   33:18.
five 5:20.
flew 24:10.
flexible
   42:14.
followed 6:25,
   7:11.
following
   38:11.
Force 15:21,
   19:24.
forced 32:3.
foregoing
   43:15.
form 32:18.
forming
   30:4.
forth 4:1,
   5:1, 28:2.
forward
   27:18.
fought
   29:11.
found 39:19,
   42:11.
founding
   28:21.
four 3:14,
   8:23, 18:24,
   20:20, 36:2,
   36:8,
   37:8.
four-year
   20:16.
framework
   6:9.
framing
   22:12.
frank 31:24.
frankly
   28:23.
free 30:11,
   30:12.
freedoms
   30:14.
frequently
   28:17.
front 11:2,

34:10.
full 36:18.
fully 4:12,
   17:21,
   29:25.
future 28:9.
.
.
< G >.
gallows
   29:18.
gamely
   14:25.
gas 14:24,
   31:3.
gator 11:18.
gave 20:5,
   27:12.
general 10:18,
   18:15.
generally
   29:21.
generous
   36:24.
gets 10:15.
getting 31:21,
   33:4.
Give 8:12,
   8:19, 21:3,
   23:20,
   23:25, 25:6,
   25:10,
   34:15,
   37:25.
given 8:3,
   8:4,
   34:18.
giving
   17:15.
glad 27:5,
   27:20.
glitch 25:3,
   36:21.
Government
   1:25, 2:8,
   3:12, 4:18,
   6:24, 8:23,
   17:15,
   18:23,
   20:19,

20:21,
28:20, 36:2,
40:6.
grandchild
33:17.
grandchildren
43:3.
grandma
34:8.
grandmother
29:20.
grandson
36:25.
granted
40:11.
gray 11:6,
11:9.
great 32:10.
greater 19:17,
28:4,
36:3.
group 28:22,
29:10, 30:4,
35:14.
grow 43:6.
growth 32:7.
guess 9:11,
9:20.
Guidelines
5:11, 7:19,
8:18.
guilty 2:23,
5:10, 5:22,
25:13.
guy 22:22,
29:2.
.
.
< H >.
H-e-m-e-n-w-a-
y 20:4.
hallway 13:3,
15:7.
halt 28:20.
hand 10:15.
hang 41:23.
happen 39:21,
39:22.
happened
28:18.

happens
27:2.
hard 22:1,
27:3, 31:22,
31:23.
hat 11:10.
hate 21:9.
head 30:16.
hear 2:15,
9:25, 13:8,
13:12,
13:13,
17:18,
33:23.
heard 13:15,
26:3,
31:3.
Hearing 3:8,
4:4, 5:4,
26:10.
hearings
7:1.
heartfelt
26:9.
held 41:7.
help 27:18.
helped 27:1.
Hemenway 20:4,
20:5,
20:7.
hereby 36:6,
43:14.
high 35:15.
high-pitched
13:12,
14:3.
highly 28:24,
42:20.
hired 24:18.
historically
7:16.
history 9:7,
18:5, 18:7,
18:18,
18:22, 19:1,
19:12,
19:16, 20:6,
20:13, 21:6,
23:13, 24:3,
25:4, 28:11,

32:22.
hit 43:9.
hitting
11:19.
hold 25:23,
26:7.
hole 28:25.
home 38:2,
39:14,
39:15,
39:23.
Honorable
1:18, 2:4,
2:5.
hoodie 11:6,
11:10.
Hope 10:16,
33:19,
37:13,
43:9.
hoped 37:17.
horrendous
35:2.
hours 8:24.
House 31:12.
humiliate
32:5.
hung 30:24.
hurt 25:1.
.
.
< I >.
illegal 7:15,
7:22.
immediately
14:11,
36:14,
41:8.
implies
34:2.
importantly
16:1.
impose 7:10,
28:2, 28:3,
36:9.
imposed 23:14,
28:6, 36:5,
38:17,
39:5.
impressed

32:6.
imprisoned
31:25.
imprisonment
5:18,
34:16.
in. 23:23,
30:24,
40:20,
40:23.
inaccurate
17:13.
INAUDIBLE.
25:18,
27:8.
incarcerated
18:7, 27:15,
32:8.
incarceration
6:24, 7:7,
7:10, 7:16,
8:23, 9:8,
18:24,
20:15,
20:17,
20:20, 21:5,
21:22,
21:25, 23:5,
25:8, 36:7,
39:21.
include
28:5.
included 3:18,
20:6.
including
5:14, 9:2,
9:7, 18:10,
28:23, 29:4,
34:6.
incorrect
17:13.
indicate 3:22,
32:4.
indicates
30:6,
31:7.
individual
10:6, 10:7,
10:9, 13:4,
30:2.

individually
  34:21.
individuals
  3:15.
inflicted
  32:14.
information
  28:24, 40:1,
  40:11.
inside 15:22,
  16:11,
  31:2.
insidious
  24:13.
install
  22:12.
installment
  21:17.
instead
  23:20.
institution
  37:9,
  38:2.
instructions
  41:25.
intention
  40:14.
intentional
  31:15.
intervening
  21:4.
interview
  15:19,
  16:24, 17:1,
  17:4,
  17:12.
invading
  14:25.
investigation
  39:2.
invoke 17:9.
involved 7:2,
  31:1,
  36:11.
issues 4:24,
  32:19.
.
.
< J >.
J-a-n-c-a-r-t

19:20.
jail 23:12,
  23:20, 24:1,
  25:6, 25:11,
  31:18,
  32:12.
Jancart 19:20,
  19:24.
jealous
  10:9.
Jeffrey 2:7,
  9:5.
Jeffrey A.
  Kiok 1:25.
jeopardy
  33:24,
  33:25.
Jessica 2:9.
job 22:5,
  22:7, 22:9,
  31:21.
jobs 23:19,
  29:8.
John 2:8,
  3:16.
John R. Osgood
  1:33.
Joseph 3:15.
Judge 1:19,
  2:5, 19:21,
  26:3.
judges 21:16,
  35:24.
judgment 36:5,
  39:9,
  41:16.
jurisdiction
  9:14, 9:21,
  20:22,
  39:12,
  39:13.
Justice
  1:26.
.
.
< K >.
Kansas 10:8,
  24:11.
Kasey 2:7,
  2:23, 22:25,

24:16,
  36:6.
KASEY HOPKINS
  1:10.
keeping
  28:2.
kind 23:7,
  24:14,
  24:22.
kinds 32:4.
Kiok 2:8,
  2:18, 2:19,
  2:20, 3:25,
  6:12, 7:1,
  8:21, 11:13,
  16:12, 17:3,
  17:10,
  17:11,
  17:17,
  20:25, 21:3,
  21:13,
  26:14, 27:6,
  27:13,
  38:22, 40:1,
  42:5.
knapsacks
  29:14.
knowing 31:15,
  32:22,
  32:23.
known 30:19,
  31:8,
  34:5.
knows 24:8,
  34:22.
.
.
< L >.
label 31:23.
lack 14:21,
  25:24,
  29:22.
lady 26:15.
lamp 14:22.
large 23:14,
  32:10.
later 12:14.
Laurel 3:15.
Law 1:34,
  28:7, 29:11,

35:11.
lawful 28:20,
  41:9.
lawyer 26:6,
  30:6, 32:6,
  40:21.
learned
  22:12.
leave 24:10,
  30:23,
  30:24, 38:5,
  38:9.
leaves 12:11,
  12:13,
  15:15.
leaving
  30:23.
led 32:8.
Lee 1:36.
left 13:4,
  27:20,
  30:21, 31:2,
  31:10,
  37:6.
legal 7:3,
  30:20.
legitimate
  29:3.
length 24:25,
  28:17.
less 28:19.
letter 21:22,
  22:23,
  25:15,
  25:25,
  32:11.
letters 3:13,
  25:15.
licenses
  27:14.
life 21:17,
  21:24,
  27:21,
  36:24,
  42:24.
likes 21:16.
line 16:4,
  33:5, 35:22,
  41:24.
list 27:9.

listening
  27:23,
  28:23,
  28:25.
literally
  21:24,
  33:6.
little 26:5,
  26:10.
living 22:19,
  36:24.
lobby 14:2.
local 3:4,
  38:12.
long 9:17,
  31:18, 32:1,
  41:12.
looked 24:20,
  24:21,
  35:23,
  35:24.
looking 11:17,
  13:5, 16:12,
  16:13,
  23:13, 24:3,
  31:5, 43:3,
  43:4.
looks 12:12.
looted
  29:16.
lose 33:2,
  34:6.
lost 29:2,
  29:6.
lot 8:10,
  9:23, 27:14,
  31:9, 31:18,
  33:17,
  38:4.
loud 13:12,
  14:3.
lounge
  19:10.
lower 11:9.
luck 43:8,
  43:10.
.
.
< M >.
M-a-k-a-y-l-a

3:16.
M-a-z-z-o-c-c-
  o 19:7.
ma'am 6:11.
magnitude
  43:2.
mainly 8:25.
major 25:4.
Makayla
  3:16.
man 10:11,
  21:6, 21:11,
  24:24,
  26:17, 32:9,
  42:19.
managed 22:5,
  22:9,
  33:15.
mandatory
  5:19, 6:1,
  38:11.
marched
  29:19.
mark 12:15,
  16:18.
marked 11:24,
  13:18.
marks 16:4.
marriage
  33:18.
married
  22:19.
Marshals
  37:14,
  41:17,
  41:19, 42:2,
  42:9.
material
  38:18.
matter 30:13,
  33:22,
  43:16.
matters
  41:3.
Matthew
  19:6.
maximum 5:18,
  5:24, 21:25,
  23:25,
  25:11.

Mazzacco
  34:15,
  34:16.
Mazzocco 19:6,
  19:18.
mean 26:13,
  31:20,
  31:22, 32:2,
  32:19.
media 24:12,
  30:5.
meeting
  27:20.
member 25:5.
memo 10:5,
  10:19,
  17:24,
  19:19,
  23:12,
  24:20.
memoranda
  18:19.
memorandum
  3:12, 7:6,
  16:7,
  16:8.
mentality
  26:24,
  35:13.
mention 21:4,
  32:11,
  33:17.
mentioned
  19:19.
mentioning
  14:23.
Mercy 42:21.
Merkley 9:5,
  31:11.
message
  24:7.
met 24:18.
mid 18:10.
mind 33:1.
minimum 5:19,
  38:6.
minute
  12:21.
minutes 12:5,
  12:10,

12:14, 14:5,
  15:15, 20:9,
  33:8, 34:9,
  34:17.
misdemeanor
  5:11, 5:21,
  18:20,
  19:23,
  29:24,
  29:25.
misdemeanors
  8:6,
  34:14.
misinformation
  29:1.
Missouri
  9:22.
mistake
  43:1.
mistakes 35:9,
  42:23.
MO 1:36.
mob 26:24,
  30:1,
  35:13.
monitor
  11:1.
month 37:4.
months 5:18,
  6:17, 8:23,
  8:24, 18:24,
  20:20,
  34:19, 36:2,
  36:8, 36:9,
  37:8.
morning 2:2,
  2:3, 2:12,
  2:13.
motion 40:11,
  40:25.
motivator
  27:17.
mouth 32:3.
move 27:17.
moved 11:24,
  13:19.
Moving 10:4,
  10:17,
  10:20, 12:9,
  15:17,

```
 1     18:4.              28:13,            NW 1:28,           14:11,
       MR. OSGOOD         34:11,             1:47.             14:14,
 2      4:11, 4:23,       41:2.            .                   14:21,
        5:2, 6:11,       needed 2:13.      .                   24:16,
 3      7:13, 8:10,      needs 38:1.       < O >.              29:21, 31:7,
        9:23, 10:2,      negative         object 8:1,         31:8, 31:10,
 4     12:2, 16:3,        38:15.           16:3,              31:11,
       16:16,            neither           16:8.              33:10,
 5     16:22,             33:20.          objection           35:22, 39:1,
       16:25, 17:6,      nervous 25:20,    3:25, 4:10,        39:15,
 6     17:8, 17:14,       26:10.           5:4, 12:1,         39:23.
       17:19, 21:2,      new 19:3,         17:18,            Officer
 7     25:19, 26:3,       41:4.            38:21.             15:22.
       26:9, 37:13,      next 29:9.       objections         offices
 8     37:16,            night 22:16.      3:23, 4:25,        34:17.
       37:21, 38:3,      No. 1:5,          42:3.             Official 1:44,
 9     38:25,             12:16,           obligation         43:20.
       41:15, 42:8,       42:8.            36:18.            often 29:4.
10     42:12,            Nobody 24:4.      obligations       Okay 2:22,
       42:15.            noise 13:12.       38:16.            4:12, 4:21,
11     MS 2:9, 22:21,    nonanswer        Obviously           6:14, 7:5,
       26:15,             16:1.            8:11, 13:8,        8:16, 9:25,
12     41:20,            none 35:1.        14:12,            10:3, 11:12,
       41:22.            nooses            17:14,            15:9, 39:1,
13     multiple 18:9,     29:18.           37:19,            42:12.
       19:2.             nor 33:20.        41:15.            old 7:18.
14     myself            normally         occasion          Once 33:7,
       26:20.             14:14,           40:24.            33:8,
15     mystifying         19:11,          occupants          34:18.
       35:11,             37:22.           29:16.           One 7:12,
16     35:12.            note 6:23,       occupying          12:20,
       .                  19:2, 19:19,     31:10.            14:10,
17     .                  20:2,           offender 22:5,     14:23, 16:6,
       < N >.             23:13.           22:9, 31:16,      18:8, 19:22,
18     name 2:18,        noted 17:24.      31:22,            21:7, 21:9,
       42:20.            notes 16:24.      31:23,            21:16,
19     named 42:19.      nothing 7:8,      33:15.            23:11,
       Nancy 29:20.       32:21.          offense 3:11,      23:15, 29:4,
20     National          notice 21:2,      5:7, 5:11,        30:14,
       1:27.              21:3.            5:20, 5:23,       31:25, 33:9,
21     nature 28:10,     noticed          15:14, 28:7,       35:8, 36:19,
       28:16.             36:19.           28:16,            38:2, 38:4,
22     near 43:1.        notify 6:16,      29:24.            40:18.
       necessary          36:17,          offenses          one-count
23      28:4, 36:3,       38:18,           34:23.            39:25.
       36:12,             41:23.          offensive         one-page
24      42:11.           Nowhere           30:14.            7:6.
       neck 11:18.        43:1.           Office 6:17,      ones 38:4.
25     need 28:6,        number 34:23,     6:20, 7:2,       open 3:2,
       28:12,             40:17.           9:5, 11:16,       19:11.
```

```
operating                32:17,              31:4.                2:24,
  6:9.                     35:16.            penal 5:14.           5:16.
opinion                  .                   penalties           picture
  28:19.                  .                    41:6.                14:16.
opportunity              < P >.              penalty 5:18,       pictures
  8:19, 9:18,            Pack 10:10.           36:2,               14:25,
  23:10,                 pages 10:5.           41:11.              31:8.
  25:25.                 paid 36:18,         pending             place 15:10,
opposition                37:5.               41:7.                30:5.
  20:22.                 papers 4:18.        Pennsylvania        Plaintiff
oral 32:3.               parading 2:23,        1:28.               1:7.
order 39:3.               5:16.              people 23:9,        plan 10:16,
ordering                 Parliamentaria       25:2, 26:21,        21:17.
  3:6.                     n 11:16.            27:3, 27:5,        plane 32:24.
Osgood 2:8,              part 3:3,             27:9, 28:22,       play 4:6,
  4:10, 4:13,             20:6, 28:1,          29:6, 29:10,        14:5,
  4:21, 6:10,             32:10,               29:13, 31:5,        28:15.
  7:5, 9:20,              39:6.                31:9, 31:18,       played. 11:7,
  12:1, 16:8,            participate           33:10,              11:14, 12:6,
  21:1, 25:12,            29:8.                33:24, 34:9,        13:1, 13:24,
  26:8, 26:12,           participated          35:13.              14:7,
  31:17,                  29:23.             perhaps              14:19.
  31:19,                 particular            11:11.            playing 11:4,
  32:15,                  38:1.              period 6:25,          13:11,
  33:23,                 parties 2:10,         7:8, 7:10,          14:3.
  34:22, 35:4,            3:1, 3:22,           7:15, 8:24,       plea 3:11,
  37:11,                  6:16, 6:21,          9:10, 10:17,        6:7, 25:22,
  38:24,                  8:5, 8:18,           18:8, 18:16,        26:4, 39:7,
  40:14,                  8:19.                20:15,              39:25.
  42:7.                  past 8:3, 8:4,        20:16,            pleaded 2:23,
others 21:11,             8:8, 26:17,          20:20, 21:4,        5:10, 5:22,
  32:17.                  27:9,                21:25, 36:8,        25:13,
otherwise                 31:12.               36:10.              29:25.
  3:5.                   path 27:18,         periods 9:8.        Please 26:3,
ourselves                 32:9.              permission            26:12,
  35:8.                  pause 13:7,           39:10,              26:13.
outlined                  14:8.               41:9.             pled 40:3.
  18:5.                  pausing 11:8,       person 21:15,       plenty 22:6.
outnumbered               13:25.              22:3, 22:17,       point 6:16,
  29:11.                 pay 6:2,              24:13,              12:10, 13:6,
outside 12:19,            33:22, 34:2,         32:16,              13:8, 14:9,
  23:22.                  36:13, 37:7,         43:7.               17:20, 21:7,
overruled                 38:16,             personal 32:7,       24:25, 29:4,
  17:18.                  38:19.               41:1.               31:19.
overthrow                payable            persuasion          points 8:13,
  28:19.                  36:14.               30:11.              30:6.
overturned               paying 35:16,      petty 5:22.         political
  14:22.                  37:3.              phone 11:11.          30:11.
own 3:14, 9:2,           payment 6:4.       pick 41:4.          portion 3:6.
  28:25,                 peaceful           picketing           position 7:5,
```

8:5, 8:8,
8:15, 9:21,
16:17,
17:16,
27:7.
possess
38:13.
possibility
10:14,
30:7.
possible
29:14.
post-convictio
n 17:1.
post-plea
17:23.
posturing
30:5.
potential
30:3.
power 28:20.
pre-arrest
17:4.
pre-fbi
17:12.
pre-january
9:2.
prefer 38:3.
preparation
3:8.
prepared 4:6,
13:15.
presence
17:25.
presentence
3:9, 3:20,
3:21, 3:23,
4:17, 4:22,
5:1, 5:6,
6:21, 18:6,
36:19,
39:2.
presiding
2:5.
pretty 24:17,
27:6, 27:7,
27:13.
previous
32:22.
price 35:16.

prior 22:25,
34:18.
prison 21:20,
23:1, 24:24,
27:9, 27:15,
35:19.
Prisons 36:7,
37:9, 38:9,
40:21,
41:22,
42:14.
private 14:13,
15:1, 20:8,
20:12.
probably 6:16,
8:14, 35:12,
43:6.
problem 16:19,
16:22.
procedurally
41:16.
proceed 3:1.
proceeding
3:3, 3:6.
proceedings
43:12,
43:16.
process
29:8.
produces
16:4.
productive
23:6, 23:7,
23:8,
35:4.
profits
23:16.
program
22:1.
prohibited
3:4.
promote 28:7,
28:9.
pronounce
2:18.
proposed
30:4.
prosecutor
7:13, 7:17,
21:8.

protect
28:8.
protest
31:4.
proud 26:16,
26:17,
27:12, 30:4,
32:20,
33:12,
42:25.
provide 19:5,
28:7, 28:13,
32:17.
public 14:14,
19:11, 21:7,
28:9.
publish 3:5.
punch 10:9.
punish
23:15.
punished
30:18.
Punishing
23:15,
26:25.
punishment
24:2, 25:7,
28:8, 33:21,
35:20.
purpose 5:8.
purposes
28:5.
Pursuant 6:6,
39:4.
Put 16:9,
16:14,
16:18,
23:17,
24:24,
29:18,
29:21.
puts 16:5,
22:24.
putting 11:18,
16:16,
33:23,
33:24.
.
.
< Q >.

quickly
12:9.
quite 5:2.
quoting
16:10.
.
.
< R >.
R-a-h 19:21.
rabbit
28:25.
Rah 19:20.
rally 30:9,
30:16,
32:25,
33:3.
range 34:20.
ransacked
14:22.
rare 23:3.
re-establish
22:18.
read 4:22,
7:6, 25:15,
32:1,
42:21.
real 26:24,
35:17.
realize 8:1,
27:24.
realizing
30:22.
really 18:14,
31:20,
31:23, 32:4,
32:15, 33:1,
33:7, 33:12,
33:13.
reason
27:11.
reasons 20:19,
23:11,
28:23,
40:18,
41:1.
receive
16:23.
received 3:8,
3:17, 17:4,
19:25,

20:14,
20:16,
40:24.
recitation
5:5.
recitations
4:1.
recite 10:18,
10:19,
19:1.
recited
10:5.
recommend
42:20.
recommendation
3:10, 3:21,
6:19, 8:23,
9:13, 20:22,
35:22,
37:11,
37:12.
recommended
6:17,
23:11.
record 3:5,
27:14, 34:7,
42:4,
43:16.
recording
11:11,
12:12.
recovered
16:13.
red 11:10.
redemption
34:25.
reenters
12:14.
referring
17:3.
reflect
28:6.
regard 3:20,
7:22, 8:2,
28:16,
39:12,
40:13,
42:14.
regarding 5:6,
7:8, 9:6.

registered
22:4,
22:9.
regrets 24:9,
24:10.
rehabilitate
31:21.
rehabilitated
21:12.
Rehabilitation
21:13,
28:9.
REICHLER 2:10,
26:15,
41:20,
41:22.
relationship
33:16,
33:18.
relationships
32:18,
33:19.
relatively
37:9.
release 5:24,
38:14, 39:2,
40:16, 41:6,
41:13.
relieved
38:15.
rely 33:24.
Remaining
40:2, 40:7,
40:9,
40:11.
remind 3:3.
remorse 20:9,
25:24.
repeated
15:13.
report 3:9,
3:20, 3:21,
3:24, 4:1,
4:18, 4:22,
5:1, 5:6,
5:7, 6:22,
18:6, 36:20,
39:2.
Reported
1:43.

Reporter 1:44,
43:20.
representing
2:8, 2:9,
2:10.
request 37:12,
39:10.
required 16:9,
16:14.
resembles
26:17.
resembling
33:1.
reserve 9:12,
20:21.
respect 28:7,
29:22,
43:5.
respectively
19:23.
respond
15:23.
restitution
6:2, 6:18,
8:25, 28:13,
33:22,
33:23,
36:13,
38:20.
result 6:5,
23:4.
resume
14:18.
resuming
11:13.
revealed
6:21.
reviewed 3:9,
3:11.
revoked
18:13.
ridiculously
26:15.
right-hand
22:21.
rightfully
32:20.
rights 39:6.
rioter 13:10,
14:1, 14:10,

14:13.
rioters 13:13,
14:23,
19:13.
riots 6:5.
ripple 34:1.
risk 34:5.
role 17:22.
roll 10:10.
Room 1:48,
13:5, 15:7,
20:1.
RPR 1:43,
43:14.
rules 3:4.
running
35:15.
.
.
< S >.
S. 1:18,
2:5.
satisfied
4:13.
saw 14:2,
15:5, 31:1,
31:2.
saying 16:12,
31:5.
says 7:21,
10:13,
10:14,
21:21,
22:22,
22:24.
scratch
22:11.
screamed
29:19.
screen 11:20,
12:8.
screens
10:23.
screenshots
3:5.
seated
14:17.
second 15:2,
15:3, 21:22,
22:10,

```
          33:10.            27:15, 28:2,      4:13.             35:10.
       secondary           28:3, 28:6,     serving          side 5:5,
          9:6.              28:12,            41:7.             37:7.
       seconds 11:5,        35:19, 36:5,   session 2:5.      sides 23:3.
          11:8, 12:5,       37:18, 39:3,   set 4:1, 5:1,     sidewalk
          13:23,            39:5, 41:7,       28:2, 34:23,      24:23.
          13:25,            42:4,             42:8.           sign 25:24.
          14:5.             42:17.          sets 5:24,        signed 3:11.
       Section 2:25,     sentenced           20:11,          significant
          5:13, 6:7,        18:11, 19:3,      21:10.            9:8, 12:11,
          28:3, 38:17,      19:13, 36:8,   seven 11:5,         13:6, 14:12,
          39:4.             36:13,            11:8,             19:16, 20:6,
       Security 1:27,       41:4.             27:15.            24:1,
          38:6.          sentences 8:3,    seven-year          25:4.
       seeks 20:20.         8:4, 28:12,       18:8,           significantly
       seem 21:13.          37:10.            20:14.            24:25.
       seen 18:20,       Sentencing         several           similar
          31:18,           1:17, 2:22,       22:15.            38:4.
          33:17.            3:9, 3:12,      severe 27:7.      single 27:19,
       self-surrender       3:21, 4:19,     sex 22:4,           34:20,
          23:21,            5:9, 5:11,        22:9.             34:21,
          37:14, 38:1,      6:15, 7:6,      Sexual 20:7,        37:4.
          40:13,            7:18, 7:19,       31:22,          sir 27:13,
          40:15,            7:23, 8:17,       32:1.             43:8.
          41:5.             9:16, 9:25,     shall 36:16,      sit 26:17,
       Senate 11:16,        16:7, 16:8,       39:1.             26:18.
          12:20,            17:24, 24:3,    share 10:22,      sits 21:5.
          12:23, 14:2,      24:20, 28:5,      12:16.          sitting 24:16,
          15:6, 29:21,      34:11.          sharing            26:15,
          31:13,         separate            13:7.             26:19.
          33:10.            20:15,          shit 10:15.       situation
       Senator 9:5,         20:17.          shock 10:11.       23:3,
          31:10.         serious 9:7,      shocked 15:24,      23:17.
       send 24:7,           18:22,            16:12,          six 5:18.
          38:6.             20:11,            16:14.          small 35:4.
       sense 10:1,          20:13,          short 37:10,      smelled
          34:6.             20:14, 30:1,      41:12.            31:3.
       sensitive 9:4,       31:14.          shorter          smells
          12:12, 15:1,   seriously           37:18.            14:23.
          15:11, 18:3,      30:25.          shortly          social 24:12,
          18:22,         seriousness         7:24.             30:5.
          19:10,           28:6, 28:18,    shoulders         sodomy 32:3.
          19:15, 20:1,      29:24.            27:2.           solicited
          20:12.         served            show 35:8,          30:2.
       sent 3:18.           23:21.            42:9.           soliciting
       sentence 6:24,    service 8:25,     showed             10:7.
          7:15, 7:18,       36:10,            29:22.          somebody
          7:22, 8:12,       37:18,          showing            35:10.
          8:20, 9:23,       37:19.            13:21.          somehow
          19:17, 20:5,   services          shown 32:15,        17:13.
```

someone 14:11,
  14:14,
  14:16.
somewhat
  34:13.
soon 24:9.
Sorry 13:16,
  40:5, 40:8,
  40:10.
sort 8:25,
  11:19,
  17:25,
  34:22.
sound 11:4,
  12:24, 13:8,
  13:9, 13:11,
  14:3.
sources
  28:24.
South 38:3.
space 9:4,
  12:12,
  14:14, 15:1,
  15:11, 18:3,
  18:22,
  19:10,
  19:16,
  20:1.
spaces 20:8,
  20:12.
Speaker 19:25,
  26:7.
speaks
  22:22.
special 5:25,
  6:19, 36:14,
  38:16,
  38:20.
specific
  18:15.
specifically
  9:4, 10:20,
  15:22.
speech 26:9.
spent 27:15.
spin 17:15.
spitting
  24:23.
split 7:18,
  8:12,

18:24.
spoken
  28:17.
spot 24:11.
spouse
  19:10.
standard
  26:8.
start 5:14,
  32:16,
  41:7.
state 18:11,
  36:5,
  38:12.
stated 5:7,
  6:8, 42:4.
statement
  3:11,
  15:13.
statements
  5:1, 9:3,
  17:12.
States 1:1,
  1:5, 1:19,
  1:45, 2:7,
  2:25, 20:4,
  34:15.
statute 5:14,
  5:24.
statutes
  5:23.
statutory
  5:18, 6:8.
Steal 32:25.
stenographic
  43:15.
stepdaughter
  32:18,
  33:16,
  37:1.
Stevenson
  42:20.
Stop 32:25.
straight
  37:17.
straightforwar
  d 5:3.
Street 1:35.
strictly
  3:4.

strikes
  21:10.
striking
  36:23.
stronger
  43:7.
strongly
  39:21.
structure
  7:19.
stuck 28:24.
stuff 24:13.
subcontractors
  22:14,
  23:19.
subject 39:6,
  39:20, 41:5,
  41:10.
subsequently
  18:12.
substance
  38:13.
substantial
  23:12.
succeeded
  28:22,
  32:10.
suck 10:15.
sufficient
  28:4, 34:1,
  36:3.
suggest 16:16,
  23:16, 24:6,
  25:6,
  37:7.
suggested
  23:12.
suggests
  19:16.
Suite 1:29,
  1:35.
Summit 1:36.
sunglasses
  12:9.
supervised
  5:23, 39:15,
  39:23.
supervision
  18:16,
  22:14,

39:14.
support 3:13,
  25:15,
  30:10,
  30:12,
  30:13,
  36:22.
supposed
  30:20.
Supreme
  29:5.
surrender
  41:8, 41:14,
  41:24.
suspended
  27:14.
sustained
  6:4.
SW 1:35.
system
  34:24.
.
.
< T >.
T-o-r-c-h-i-a
  3:15.
T. 1:43,
  43:19.
table 14:17.
takeaway
  26:19.
talked 7:13,
  33:14,
  35:13.
Tanya 1:18,
  2:5.
Task 15:21.
tear 14:24,
  31:3.
technical
  36:21.
ten 13:25,
  15:15,
  34:9.
Tennessee
  37:14.
term 5:23,
  18:11,
  36:7.
terms 34:7.

```
1    terror          11:15,          40:22,          8:14.
     32:13.          14:15,          41:13.          unopposed
2    terrorized      37:5.           Turning         40:25.
     29:15.          trained         31:16.          unreliable
3    testing         26:7.           Twice 9:3,      28:24.
     38:15.          TRANSCRIPT       10:22, 18:2,    until 27:16,
4    tests 38:14.    1:17, 3:7,      18:21,          36:17.
     THE CLERK       43:15.          19:15, 33:7,    unusual 8:6,
5    2:3.            transfer 9:13,  33:9.           23:23,
     THE DEFENDANT   20:23,          two 8:25,       28:14,
6    2:16, 4:15,     28:20,          12:5, 12:10,    41:16.
     4:20, 26:14,    39:12,          19:22,          unwarranted
7    37:3.           39:13.          20:11,          28:12.
     theft 22:8.     transferred     33:18,          upper 13:3.
8    They'll 37:23,  9:22.           38:13.          urinated
     41:22.          transformation  types 28:11,    32:3.
9    they've 16:13,  32:7.           34:14.          utter 29:17,
     27:20.          travel 30:3.    .               29:22.
10   third 12:25.    treated         .               .
     though 37:9.    29:17.          < U >.          .
11   thousand 6:18,  treatment       U.S.C 5:17.     < V >.
     24:5.           38:16.          ultimately      v. 19:6.
12   thousands       tried 23:21.    29:5.           variety
     29:13.          troubled        unable 39:9.    5:13.
13   three 4:5,      21:14,          understand      various
     14:5.           21:20,          25:21,          41:1.
14   throwing        21:21.          26:11,          varying
     31:9.           True 21:14,     26:23,          28:23.
15   till 27:9.      24:20,          26:25,          versus 2:7,
     tirelessly      42:22.          30:22,          20:4,
16   27:4.           truly 21:11,    understandable  34:15.
     Title 2:25.     23:7.           42:18.          vest 11:10.
17   today 21:5,     Trump 30:4.     understanding   veteran
     24:16,          trust 22:24,    7:9, 32:13,     19:24.
18   27:8.           27:10,          35:17.          Via 1:13,
     together        40:18.          underwent       3:1.
19   22:20.          trusted         32:7.           viable
     too. 10:16.     27:5.           uninterrupted   22:13.
20   took 17:23,     truthful        28:21.          victim
     22:1.           17:22.          United 1:1,     32:12.
21   top 12:8.       truthfully      1:5, 1:19,      Video 2:11,
     Torchia         33:2.           1:45, 2:6,      3:1, 10:24,
22   3:15.           try 27:19,      2:25, 20:4,     11:5, 11:7,
     totally 25:16,  32:9,           34:15.          11:8, 11:13,
23   25:21, 26:6,    34:24.          unlawfully      11:14, 12:6,
     26:11.          trying          38:13.          13:1, 13:10,
24   tough 34:24.    22:17.          unless 9:12,    13:23,
     toward          turn 7:23,      16:4.           13:24,
25   18:15.          32:25,          unlike 20:7.    13:25, 14:4,
     towards 6:4,    40:20,          unnecessary     14:6, 14:7,
```

```
 1      14:8, 14:10,    wants 9:12,         41:18, 43:6,     Yankton
        14:18,            16:18,            43:7, 43:8,        38:3.
 2      14:19,            17:15.            43:10.           years 5:20,
        15:24,          war 10:14,        window 12:22,       7:17, 21:8,
 3      15:25,            10:15,            12:23.            21:9, 25:3,
        16:10,            30:3.           windows             27:15, 32:2,
 4      16:11,          warn 13:22.          22:12.           32:14,
        16:13,          Washington        wing 12:20,         37:4.
 5      16:14,            1:10, 1:30,       12:24, 14:2,     young 26:15,
        16:17.            1:49,             15:6, 31:12,       32:2, 42:24,
 6      view 23:23.       10:8.             31:13.             43:2.
        violate 39:18,  watching          wise 42:19.       yourself
 7        41:6.           3:2.            wiser 43:7.          31:21,
        violated 19:3,  ways 23:15,       wish 43:8.          32:15, 35:3,
 8        20:17.          35:8.           Within 36:16,       35:10,
        violation       weapons             39:8.            40:20,
 9        2:24, 5:17,     29:14.          without 39:11,      40:22,
        39:16,          wearing 11:6,       41:9.             41:13,
10        39:19.          11:9,           witnesses           42:17.
        violence          12:8.             4:3.             youth 21:14,
11        10:12,        week 21:22.       woman 22:18,         21:21.
        30:7.           weekend 37:18,      32:2.            .
12      virtually 4:7,    37:19.          wonderful          .
        22:10.          weight 27:2.        22:22,           < Z >.
13      visit 15:3.     whatsoever          22:23.           zero 13:23.
        vocabulary        21:4,           word 14:22,        Zoom 1:13.
14        21:14.          24:22.            34:6.
        voluntary       whether 7:23,     work 21:9,
15        41:24.          9:21, 25:16,      22:10,
        vs 1:8.           37:17.            22:15, 23:8,
16      .               wide 34:20.         23:9, 27:3,
        .               Will 5:5, 5:8,      31:17,
17      < W >.            6:15, 12:3,       32:16,
        waited 29:9.      12:18,            42:13.
18      waived 8:11,      13:20,          worked 22:1,
        39:6.             17:22, 24:1,      22:10,
19      Walden 3:15.      24:25,            27:4.
        walk 15:6.        27:19,          working
20      walked            32:21, 35:5,      33:20.
        31:12.            35:21, 36:4,    works 22:15,
21      walking 11:15,    36:19,            22:20.
        11:18,            37:21, 38:8,    world 43:8.
22      11:20,            39:12,          worst 35:1,
        12:23, 13:3,      39:22,            35:2,
23      13:4, 14:25,      39:23,            42:21.
        23:23, 31:5,      40:18,          written
24      31:11,            40:20,            25:24.
        33:4.             40:21,          .
25      wandering         41:16,          .
        34:8.             41:17,          < Y >.
```